## HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* SAN JOAQUIN FRUIT & INVESTMENT CO.

No. 379.  Argued February 13, 1936.—Decided March 2, 1936.

*Assistant Attorney General Wideman,* with whom *Solicitor General Reed* and *Messrs. Sewall Key, John MacC. Hudson,* and *Frederick W. Dewart* were on the brief, for petitioner.

*Mr. George M. Naus,* with whom *Messrs. J. R. Sherrod* and *Joseph D. Peeler* were on the brief, for respondent.

Mr. Justice Roberts delivered the opinion of the Court.

Is real property "acquired," within the meaning of the revenue acts, when a lease is made containing an option to purchase, or when the option is exercised?  The ques-

tion is presented under the relevant sections of the Revenue Acts of 1921, 1924, 1926 and 1928.[1]

October 13, 1906, the Irvine Company leased to the San Joaquin Fruit Company one thousand acres, part of a much larger tract, of bare unirrigated land in California. The lessor was wholly owned by one Irvine, and the lessee was organized by two experienced men who together with Irvine subscribed its capital, in the hope that planting, irrigation, and cultivation would make the land valuable. The lease was for a term of ten years from December 1, 1906; required the lessee to plant the tract as an orchard within four years, to procure and conduct a specified supply of irrigation water to the tract, and to raise certain field crops in connection with the orchard; and embodied an irrevocable option to buy the whole acreage for $200,000, exercisable November 30, 1916. Before October, 1908, the lessee procured the water, planted, and was successfully working the land; and the taking up of the option at the end of the term was then no longer a matter of doubt. By February 28, 1913, the value of the property had greatly increased. On November 30, 1916, the option was closed and conveyance made to the lessee, which subsequently transferred the land to the respondent under circumstances which do not alter the basis for calculation of gain. During the period 1920 to 1928, in-

---

[1] 42 Stat. 227, 229; 43 Stat. 253, 258; 44 Stat. 9, 14; 45 Stat. 791, 818. The provisions of the Revenue Act of 1924, which are typical, follow:

"Sec. 204 (a). The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that . . .

"(b) The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be (A) the cost of such property . . . or (B) the fair market value of such property as of March 1, 1913, whichever is greater . . ."

Section 202 of the Revenue Act of 1921 speaks of "property, real, personal, or mixed."

clusive, the respondent sold portions of the tract. In computing the tax liability for these years the petitioner determined the property was acquired November 30, 1916, when the option was exercised, and its cost was the $200,-000 paid plus the amounts expended for improvements pursuant to the lease. The respondent appealed to the Board of Tax Appeals, contending the lessee acquired a property in the land,—an interest real,—prior to March 1, 1913, and the value of the land at that date was the proper basis for calculating gain on sales. The Board sustained the petitioner.[2] The Circuit Court of Appeals reversed the Board's decision.[3] To resolve an asserted conflict[4] we granted certiorari.

We hold that the respondent acquired the property on November 30, 1916. The option itself was property, and doubtless was valuable. If it had been assignable, and the lessee had sold it at a profit, taxable gain would have resulted from the sale. But the option is admittedly not the same property as the land. So conceding, the respondent still insists that ownership of the option created an interest in the land. This would not be true of a bare option unconnected with a lease;[5] but we are told that because embodied in the lease the agreement became a covenant real and gave the lessee a species of interest or property in the land. The weight of authority is to the contrary,[6] and no cited California decision

[2] 28 B. T. A. 395.

[3] 77 F. (2d) 723.

[4] See *Commissioner* v. *Cummings*, 77 F. (2d) 670; *Chisholm* v. *Commissioner*, 79 F. (2d) 14.

[5] *Richardson* v. *Hardwick*, 106 U. S. 252, 254; *Todd* v. *Citizens Gas Co.*, 46 F. (2d) 855, 866.

[6] *Willard* v. *Tayloe*, 8 Wall. 557, 564; *Kadish* v. *Lyon*, 229 Ill. 35, 40; 82 N. E. 194; *Bras* v. *Sheffield*, 49 Kan. 702, 710; 31 Pac. 306; *Caldwell* v. *Frazier*, 65 Kan. 24; 68 Pac. 1076; *Luigart* v. *Lexington Turf Club*, 130 Ky. 473, 480; 113 S. W. 814; *Trumbull* v. *Bombard*, 171 App. Div. 700; 157 N. Y. S. 794; *Gamble* v. *Garlock*, 116 Minn. 59; 113 N. W. 175.

supports the position.[7] But even if we should agree that a lessee-optionee acquires, by virtue of the instrument, an equitable interest in the land it would not follow that, within the contemplation of the revenue acts, he acquires the property at the date of the option rather than at the date of conveyance. The word "acquired" is not a term of art in the law of property but one in common use. The plain import of the word is "obtained as one's own." Language used in tax statutes should be read in the ordinary and natural sense.[8] In the common and usual meaning of the term the land was acquired when conveyed to the respondent's predecessor.

The Circuit Court of Appeals thought that to avoid serious doubts concerning the constitutional power to tax gains accruing before March 1, 1913, it was important, if possible, to treat the property as acquired when the option was given. The court therefore resorted to the doctrine that the title when acquired relates back to the date of the option. Cited in support of this application of the theory are cases in which the California courts have invoked it to subordinate the rights of assignees or mortgagees who became such with notice of an outstanding option.[9] The fiction of relation, indulged to defeat those dealing with the legal title with knowledge of the option, can give no aid in solving the question of the time of the optionee's acquirement of property under a statute taxing gain upon a subsequent sale. And there is no need of the fiction to avoid any constitutional question. The power to tax gains which accrued prior to the adoption of the Sixteenth Amendment is not here involved. We suppose

---

[7] Compare *Ludy* v. *Zumwalt*, 85 Cal. App. 119; 259 Pac. 52; *Hicks* v. *Christeson*, 174 Cal. 712; 164 Pac. 395.

[8] *Old Colony R. Co.* v. *Commissioner*, 284 U. S. 552; *Reinecke* v. *Smith*, 289 U. S. 172.

[9] *Smith* v. *Bangham*, 156 Cal. 359; 104 Pac. 689; *Chapman* v. *Great Western Gypsum Co.*, 216 Cal. 420; 14 P. (2d) 758.

the amount received by the respondent from a sale includes and is the result of increase in value of the property in the period prior to March 1, 1913. But the gain accruing in that period did not accrue to property owned by the lessee. Neither the land nor the gain so accruing before March 1, 1913, became the lessee's property until 1916 when it took up the option.

An alternative contention is that the exercise of the option and the conveyance on November 30, 1916, constituted merely an exchange of capital assets,—a closed transaction,—and the basis for calculation of gain was the value of the land and improvements at that date. The capital asset, sale of which resulted in taxable gain, was the land. This was not an asset of the taxpayer prior to the exercise of the option. We think it clear that there was no combination of two capital assets,—the option and $200,000 of cash, to form a new capital asset, the land, which was subsequently sold at a profit. The judgment of the Circuit Court of Appeals must be

*Reversed.*