OTTO PETERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD M. MAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LYNN L. HOSIER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 95168, 95171, 95172. Promulgated June 18, 1940.

*Edward A. Smith, Esq.,* and *Ralph W. Barbier, Esq.,* for the petitioners.

*Philip M. Clark, Esq.,* for the respondent.

OPINION.

LEECH: Respondent taxed to the respective petitioners the dividend of $50 per share, paid during the taxable year on the treasury stock issued to the members of their respective families. He did this upon the premise that these shares of stock thus issued were then actually owned by the respective petitioners. He cites *Higgins* v. *Smith*, 308 U. S. 473, and *Helvering* v. *Clifford*, 309 U. S. 331, as authority for his determination of the existence of this premise here.

We do not think either case is in point except as they support the fundamental concept, recognized here, that substance and reality shall prevail in tax matters over form and unreality.

Our sole inquiry is whether, in fact, this stock was owned by petitioners after its issue to the members of their families. If it actually belonged to the members of petitioners' families to whom it was issued—regardless of whether they acquired it by gift or purchase—then it did not belong to petitioners and the dividends thereon, basing the deficiencies, are not taxable as income of petitioners.

It is true the alleged purchases of some of this stock were necessarily financed by the petitioners, individually, or by the corporation which they controlled. See *Estate of Eliot W. Mitchell*, 37 B. T. A. 161; *Thomas W. Behan*, 32 B. T. A. 1088; affd., 90 Fed. (2d) 609. It may be that an obligation to "purchase" such stock arose upon receipt of these finances. See *Madeira* v. *Commissioner*, 98 Fed. (2d) 556; *Empire Trust Co. et al., Executors*, 41 B. T. A. 839. But those

facts establish only that the transactions were gifts of the stock and not sales. They do not contradict the ownership of this stock by the persons to whom it was issued.

Nor does the absurdly low price at which the stock was issued do so. That fact, in view of the close family relationship, may have indicated an intention to make a gift at least of the excess value. See *Luella Hoyt Slayton*, 29 B. T. A. 931; affd., 76. Fed. (2d) 497; see also sec. 503, Revenue Act of 1932. But the existence of the option to buy this newly issued stock, under specified conditions, not at that low figure but at approximately book value, is evidence of the acquisition of real ownership of the stock by the record holders and not contradictory of that fact. *Carson Estate Co.*, 31 B. T. A. 607; affd., 80 Fed. (2d) 1007; *Bank of California, National Association*, 30 B. T. A. 556; affd., 80 Fed. (2d) 389; *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496. Similar options were outstanding against petitioners' stock and there is no dispute as to its ownership.

That some of the recipients of this stock and the dividends in dispute deposited these dividends in accounts to which the respective petitioner to whom they were related were parties, is of little significance. Those moneys were never used except as the funds of the recipient.

This stock, after appropriate legal procedure, was issued to the several members of petitioners' families and has remained there. None of the petitioners have exercised nor attempted to exercise any control over the stock except by proxies voluntarily executed—a circumstance certainly not unusual in view of the family relationship. See *Henry A. B. Dunning*, 36 B. T. A. 1222. These record stockholders received not only the contested dividends but other dividends in later years—all of which they returned as their own income and paid the income tax thereon. See *Elizabeth Berthold et al.*, 12 B. T. A. 1306.

Though this record may disclose that, as a bona fide sale, and purchase, this stock issue to the members of petitioners' families is heavily tainted with sham and unreality, the same evidence convinces us that the transfer of title to that stock to those record owners was actual and absolute. That conclusion disposes of our only inquiry in these proceedings. It follows that there are no deficiencies and therefore no fraud penalties.

It would appear from this record that the petitioners or the corporation are taxable on the transfer of this stock as gifts (see Revenue Act of 1932, sec. 503), but that question is not before us.

Reviewed by the Board.

*Decisions will be entered for the petitioners.*