GEORGE A. LEMBCKE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MOLLY S. LEMBCKE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

OSCAR M. BERNUTH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 100968, 100976, 101241.   Promulgated May 16, 1941.

*Albert E. James, Esq.*, for the petitioner.
*Z. N. Diamond, Esq.*, for the respondent.

OPINION.

LEECH: These proceedings, duly consolidated, involve deficiencies in income tax for the calendar year 1936 as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| George A. Lembcke | 100968 | $11, 220. 70 |
| Molly S. Lembcke | 100976 | 3, 215. 66 |
| Oscar M. Bernuth | 101241 | 7, 295. 53 |

A separate stipulation of facts was filed in each proceeding. All facts are found to be as stipulated and effect will be given to the concessions of the petitioners in the two first mentioned proceedings in a settlement under the Board's rules.

The issue in each proceeding is the same. Stated generally it is: Did the Commissioner err in including in the gross income of each petitioner for the taxable year the full amount of the dividends declared and paid upon 6 percent cumulative preferred stock of the Wood Preserving Corporation owned by him?

The petitioners filed their respective returns for the year involved herein with the collector of internal revenue for the third New York

district. They included in gross income, or now stipulate that there should be included, the amounts shown in column A of the following schedule. They deny that the amounts shown in column B, which were paid to the Koppers Co. under the circumstances hereinafter set out, should also be included.

| | Column A | Column B |
|---|---|---|
| George A. Lembcke | $4,417.50 | |
| Koppers Co | | $26,505.00 |
| Molly S. Lembcke | 1,230.75 | |
| Koppers Co | | 8,615.25 |
| Oscar M. Bernuth | 2,535.00 | |
| Koppers Co | | 17,745.00 |

At various dates in 1930 and 1931 the American Tar Products, Inc., hereinafter referred to as the Tar Co., entered into identical agreements with the petitioners. The agreements provided that the Tar Co. on the 30th day of June 1933, and annually on the 30th day of June in each year thereafter, up to and including June 30, 1952, would "purchase or cause to be purchased and/or redeemed at par, plus accrued dividends thereon, if requested so to do by [the named petitioner] up to 5 percent (5%) in each year and no more", of the 6 percent cumulative preferred stock of the Wood Preserving Corporation which he owned.

Continuously throughout 1931, to and including 1936, petitioners held and owned the following number of shares of such stock:

| | George A. Lembcke | Molly S. Lembcke | Oscar M. Bernuth |
|---|---|---|---|
| 1933 | 6,595 | 1,665 | 3,380 |
| 1934 | 6,500 | 1,641 | 3,380 |
| 1935 | 6,390 | 1,641 | 3,380 |
| 1936 | 5,890 | 1,641 | 3,380 |

On June 14, 1933, the petitioners entered into another agreement with the Tar Co. It provided that the obligation of the Tar Co. to purchase up to 5 percent of the stockholdings of the petitioners on June 30, 1933, 1934, 1935, 1936, and 1937, should be postponed and not accrue until June 30, 1953 to 1957, inclusive. The said agreement also provided:

2. Should The Wood Preserving Corporation fail to pay a dividend or dividends aggregating the sum of 75¢ per share for each semi-annual period commencing January 1, 1933, and ending December 31, 1937, then and in that event Tar Company shall pay to each Stockholder a sum of money equal to the difference between 75¢ and the aggregate of the dividends paid per share for each share of stock owned by such Stockholders for each such semi-annual period, such payment or payments to be made on June 30th and December 31st of each year commencing June 30, 1933; provided, however, that the Tar Company shall be entitled to reimbursement of the amounts so paid if, as and when dividends

in excess of $1.50 per share in any one year shall be declared by the Wood Preserving Corporation, and the Stockholders direct The Wood Preserving Corporation to make such payments.

3. Tar Company agrees, if requested at any time between July 1st and December 31st of each year commencing with the year 1933 and ending with the year 1937, to purchase within thirty (30) days thereafter, at a price of $50.00 per share (which price shall include all accrued dividends), up to the following number of shares in each such year:

| | |
|---|---|
| 1933 | 360 shares |
| 1934 | 420 shares |
| 1935 | 1,092 shares |
| 1936 | 1,824 shares |
| 1937 | 1,943 shares |

The number of shares which each Stockholder is privileged to request Tar Company to purchase in any such year, shall be limited to his pro rata proportion (figured to the closest whole share) of the maximum number of shares to be purchased.

4. On June 30, 1938, and annually thereafter, Tar Company is obligated to purchase ⅟₂₀th part of the holdings of each Stockholder as of the date hereof, at par plus accrued dividends, with proper credits for any sum of money advanced by Tar Company under the provisions of Paragraph 2 for which it shall not have been reimbursed as hereinabove provided; provided that such respective Stockholders shall make the request in any one year as provided in the original agreement and subject to the limitation of ownership therein provided. If by reason of the sale to Tar Company under Paragraph 3 hereof, any one of the Stockholders shall not be in a position to demand his pro rata share of such stock, Tar Company shall nevertheless be obligated to purchase up to 1242 shares if requested, which shall be divided pro rata among the remaining Stockholders.

\* \* \* \* \* \* \*

7. Should Tar Company default during the period of moratorium, then this agreement shall become ineffective and the obligations under the original agreement shall forthwith become effective.

Pursuant to the terms of the agreement the Tar Co. and the Koppers Co., its successor in interest, on June 30, 1933, and semiannually thereafter up to and including June 30, 1936, paid 75 cents per share to each of the petitioners upon the shares of the Wood Preserving Corporation held by him. The payments were set up on the books of the Tar Co. and the Koppers Co. in an asset account designated "Assets not considered current—advances of dividends to the Wood Preserving Corporation preferred stockholders." The entries were supported by vouchers to the individual stockholders, of which a typical one was phrased as follows: "Advance against preferred dividends of the Wood Preserving Corporation in accordance with agreement dated June 13, 1933."

From 1930 to December 1936 the Wood Preserving Corporation paid no dividends. In December 1936 it paid a cash dividend of $6 per share upon its preferred stock. The corporate resolution provided that said amount of $6 per share "be applied against the accrued dividends due thereon" and that it "be paid to stockholders of record as of the

close of business on December 16, 1936 and be paid on December 21, 1936."

All of the petitioners included in their income for the years 1933, 1934, 1935, and 1936 (with the exception of Molly S. Lembcke, who did not originally include the amount received during the year 1935 but subsequently paid a deficiency in income tax which had been determined against her based upon her failure to include said sum in her return for that year) the payments made to them by the Tar Co. semiannually during the years 1933, 1934, and 1935 and also the payments made on June 30, 1936. The amounts so included in income aggregate the amount shown in column B which, during the taxable year, was paid to the Koppers Co. Petitioners also included in their gross income for 1936, or now stipulate that there should be included in the gross income for said year, the amounts shown in column A of the schedule.

The payments made to the Koppers Co. as shown in column B were made by the Wood Preserving Corporation pursuant to the direction of each petitioner.

In its information return for the calendar year 1936 the Wood Preserving Corporation reported that it had paid to the various petitioners in 1936 a dividend in the sum aggregating an amount equivalent to the sum of the figures shown in column A and column B of the above schedule. The respondent added to the income of each petitioner the sum shown in column B, this being the portion of the dividend of December 1936 paid direct to the Koppers Co.

It will be noted that under the first agreement the Tar Co. had obligated itself to purchase annually, if requested by petitioner, at par ($100) plus accrued dividends, 5 percent of the stock owned by each petitioner.

The second agreement, and the one controlling here, postponed the obligation of the Tar Co. to make the purchases and payments set out above until June 30, 1953, to 1957, inclusive. It gave the petitioners a more restricted right to call upon the Tar Co. to purchase an aliquot portion of their stock at $50 per share; but in the event such purchase should be made the purchase price was to include all accrued dividends. On June 30, 1938, it again became obligated to purchase annually 5 percent of the holdings of each petitioner at par plus accrued dividends, with proper credit for any sum of money advanced under paragraph 2 of the contract. With this background we examine the stipulated facts and the provision of the contract relied upon by petitioner.

Petitioners argue that they were in receipt of income in the years 1933, 1934, and 1935 when they received the payments from the Tar Co. at $1.50 per share upon their stock and conclude that "if they were, they then were not in receipt of income in 1936 by reason of that part of the dividend * * * paid to Koppers Company (successor to American

Tar Products Company, Inc.) pursuant to the contract of June 14, 1933." They contend that the present controversy is limited to the "very narrow question of *when* income was received" and place their chief reliance upon *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417.

In the cited case it was conceded that the net profits with which the Court was there dealing constituted income. That being so, the Court held that the amounts became income of the company "when it first became entitled to them and when it actually received them." But here we are not dealing with earnings and there is no concession that the amounts paid in the earlier years constituted income. On the contrary the Commissioner has determined over assessments for the years 1934 and 1935 upon the theory that the amounts received from the Tar Co. in those years did not constitute income, thus eliminating the possibility of double taxation here.

If the question were as phrased by petitioner—though we do not so view it—we would be unable to conclude that the amounts received in the earlier years were income.

Petitioners argue that they were either advanced dividends, guaranteed dividends, or a part of the ultimate purchase price of the stock.

If they mean dividends, as we understand the term, the answer is obvious. These payments were never declared nor paid by the Tar Co. or its successor, the Koppers Co., as dividends. They were not treated as such by either of those companies. We do not think they were dividends. The stock upon which they are said to apply as such in effect, was not stock in either the Tar Co. or the Koppers Co., but in the Wood Preserving Corporation—a wholly separate and distinct corporate entity. The Tar Co. and Koppers Co., which made these payments, did so not because of any obligation to the Wood Preserving Corporation to pay its dividends. Rather, they were paid because of the obligation of those companies to the petitioners under the contract with them.

If, as we believe, petitioners mean that these payments to them in the prior years were consideration for the sale of their dividends to the Tar Co. or Koppers Co., its successor, the answer is simple. Petitioners did not sell their dividends, since, under the contract, they were not obligated to direct payment of them to those companies. That was discretionary with them.

And, even if these earlier payments had been part of the purchase price of the stock, only the portion in excess of petitioners' basis for the stock constituted income. But, under the contract—ambiguous as it may be—petitioners clearly had the right to reimburse the Koppers Co. by directing the payment of the contested dividends to it. Upon receipt of these dividends by the Koppers Co. the credit theretofore due that company in a similar amount upon the contract price

for the stock was eliminated and the price to be paid correspondingly increased.

Therefore, it is readily apparent that in the earlier years when these payments were made to petitioners it was wholly impossible to determine, because of the several future options in the contract, what part, if any, of them was income to petitioners. Until the Wood Preserving Corporation paid its accumulated dividends in that year and the "reimbursement" of the Koppers Co. was directed by the petitioners and occurred, the taxable status of the payments received and returned by the petitioners in the earlier years could not be determined. When those events happened, the earlier payments may well have been characterized as the proceeds of loans to petitioners. See *Virginia Iron Coal & Coke Co.*, 37 B. T. A. 195; affd., 99 Fed. (2d) 919; certiorari denied, 307 U. S. 630; *Goldfields of America, Ltd.*, 44 B. T. A. 200; *Journal Co.*, 44 B. T. A. 460; and *Rotorite Corporation* v. *Commissioner*, 117 Fed. (2d) 245. And, if so, the loans were paid by petitioners by voluntarily appropriating their dividends from the Wood Preserving Corporation to that purpose. See *United States* v. *Boston & Maine R. R. Co.*, 279 U. S. 732. The record treatment of the transaction by the Tar Co. and the Koppers Co. confirms rather than contradicts this conclusion.

But this conclusion is not necessary for a decision of the issue, as we see it. The sole issue here, we think, is the taxability of dividends declared and paid upon stock owned by petitioners. The general rule is that dividends constitute income to a shareholder when unqualifiedly made subject to his demand. *Avery* v. *Commissioner*, 292 U. S. 210. It is clear that the contracts—if indeed the agreements were more than merely unilateral—did not effect a transfer of the legal or equitable title to the stock on which dividends were paid. *Helvering* v. *San Joaquin Fruit & Investment Co.*, 297 U. S. 496. Title remained in petitioners.

The result under both the original · as well as the second and effective contract here was that petitioners were to receive the benefit of the accumulated dividends in any event.

By voluntarily directing the payment of a portion of these dividends on this stock to the Koppers Co. and its receipt of them, petitioners received a benefit in the elimination of the credit in that amount upon the purchase price of the stock for which the Koppers Co. was obligated.

It is stipulated that the payments were made by the Wood Preserving Corporation pursuant to the direction of the various petitioners. This voluntary use of the contested portion of these dividends for the benefit of petitioners does not render them any the

less taxable as such to petitioners. We conclude that they were so taxable. *United States* v. *Boston & Maine R. R. Co.*, *supra*; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122. See also *Herman M. Rhodes*, 43 B. T. A. 780; *Alfred Le Blanc*, 7 B. T. A. 256; *Harrison* v. *Schaffner*, 312 U. S. 579.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*