HELEN WHITNEY GIBSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100433. Promulgated July 9, 1941.

*Frederick E. Winkler, Esq.*, for the petitioner.
*George R. Sherriff, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The sole issue is whether or not the petitioner, owner of common stock of Manufacturers, is taxable on the fair market value of pro rata rights, evidenced by warrants, to subscribe to the preferred stock of Manufacturers, when such rights were received.

It is unnecessary to indulge in an extended discussion of the case of *Eisner* v. *Macomber*, 252 U. S. 189, or its history, interpretation, and effect upon the taxability of stock dividends. It is sufficient to state that, following that decision, it was generally accepted that all stock dividends were exempt from taxation. See *Koshland* v. *Helvering*, 298 U. S. 441. Ensuing Revenue Acts (those of 1921, 1924, 1926, 1928, 1932, and 1934) specifically reflected that theory by providing that "a stock dividend shall not be subject to tax."

While Congress was considering the Revenue Act of 1936, the decision in the *Koshland* case was rendered. The Supreme Court there said:

Although *Eisner* v. *Macomber* affected only the taxation of dividends declared in the same stock as that presently held by the taxpayer, the Treasury gave the decision a broader interpretation which Congress followed in the Act of 1921. Soon after the passage of that Act, this court pointed out the distinction between a stock dividend which worked no change in the corporate entity, the same interest in the same corporation being represented after the distribution by more shares of precisely the same character, and such a dividend where there had either been changes of corporate identity or a change in the nature of the shares issued as dividends whereby the proportional interest of the stockholder after the distribution was essentially different from his former interest. [Citing *United States* v. *Phellis*, 257 U. S. 156; *Rockefeller* v. *United States*, 257 U. S. 176; *Cullinan* v. *Walker*, 262 U. S. 134; *Marr* v. *United States*, 268 U. S. 536.] Nevertheless the successive statutes and Treasury

regulations respecting taxation of stock dividends remained unaltered. We give great weight to an administrative interpretation long and consistently followed, particularly when the Congress, presumably with that construction in mind, has re-enacted the statute without change. The question here, however, is not merely of our adopting the administrative construction but whether it should be adopted if in effect it converts an income tax into a capital levy.

We are dealing solely with an income tax act. Under our decisions the payment of a dividend of new common shares, conferring no different rights or interests than did the old—the new certificates, plus the old, representing the same proportionate interest in the net assets of the corporation as did the old,—does not constitute the receipt of income by the stockholder. On the other hand, where a stock dividend gives the stockholder an interest different from that which his former stock holdings represented he receives income. The latter type of dividend is taxable as income under the Sixteenth Amendment. Whether Congress has taxed it as of the time of its receipt, is immaterial for present purposes.

Thereafter Congress enacted section 115 (f) (1) of the Revenue Act of 1936, which reads as follows:

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\*     \*     \*     \*     \*     \*     \*

(f) STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

Article 115–7 of Regulations 94 states the matter in positive, rather than negative, form and interprets that section as follows:

ART. 115–7. *Stock dividends.*—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall be treated as a dividend to the full extent that it constitutes income to the shareholders within the meaning of the sixteenth amendment to the Constitution. \* \* \*

Dividends are includible in gross income under the broad provisions of section 22 (a) of the Revenue Act of 1936.[1] Subdivision (d) of that section is as follows: "DISTRIBUTIONS BY CORPORATIONS.— Distributions by corporations shall be taxable to the shareholders as provided in section 115." Section 115 (a) defines the term "dividend." We agree with respondent's interpretation of section 115 (f) (1) that, while exemptive in phraseology, its effect is to include in taxable dividends rights to acquire stock (represented here by assignable warrants), provided only they are not exempt on Consti-

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

tutional grounds. That this interpretation was intended by the Congress is clearly evident when we read section 27 (e) of the Revenue Act of 1936 dealing with dividends paid credits. It reads:

SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

*      *      *      *      *      *      *

(e) TAXABLE STOCK DIVIDENDS.—In case of a stock dividend or stock right which is a taxable dividend in the hands of shareholders under section 115 (f), the dividends paid credit with respect thereto shall be the fair market value of the stock or the stock right at the time of the payment.

In *John M. Keister*, 42 B. T. A. 484, a case arising under the 1936 Act, we held that a stock dividend paid in preferred stock to holders of common stock was a taxable dividend. *Koshland* v. *Helvering, supra*. The stockholder's right to purchase new stock is essentially analagous to a stock dividend. *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247.

In *Palmer* v. *Commissioner*, 302 U. S. 63, addressing itself to this general question, the Supreme Court said:

On the other hand, such a sale, if for substantially less than the value of the property sold, may be as effective a means of distributing profits among stockholders as the formal declaration of a dividend. The necessary consequence of the corporate action may be in substance the kind of a distribution to stockholders which it is the purpose of section 115 to tax as present income to stockholders, and such a transaction may appropriately be deemed in effect the declaration of a dividend, taxable to the extent that the value of the distributed property exceeds the stipulated price. * * *

In the case at bar the new stock to be purchased was the preferred stock of Manufacturers. The purchasing of that stock by the common stockholders at less than its fair market value would have resulted in income to them measured by the excess of such fair market value over the amount paid by them for the stock. The fair market value of the warrants represented a portion of that excess value. See sec. 115 (j), Revenue Act of 1936. See also sec. 27 (e), Revenue Act of 1936.

The warrant received by the petitioner represented a property right, salable and actually sold by its owner. That it had a fair market value is agreed. Under the *Koshland* decision and under the provisions of section 115 (f) (1) it was free from taxation only if it came within constitutional prohibitions.

The warrants under consideration are of a different type from common stock. They are more closely related to the convertible preferred stock. In our opinion, they represent inherently taxable dividend distributions as contemplated by section 22 (a) and (d), defined and delimited by section 115, and as determined by controlling decisions. Their constitutional immunity to taxation has not been established.

The petitioner cites and relies upon *Palmer* v. *Commissioner, supra*. That case was quite different. It arose under the 1928 Revenue Act,

which had no section comparable to section 115 (f) (1). The Supreme Court sustained the holding of the Board that the distributions of rights to subscribe to the stock of *another* corporation were sales of such stock by the issuing corporation to its stockholders and were not dividends. The facts in that case were treated from the viewpoint of the selling corporation and on the basis of a sale. They did not bring the decision within the ambit of section 115 (f) (1) and thus the discussion there is not in point.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

TURNER, dissenting: Reasoning from the language of section 115 (f) (1), of the Revenue Act of 1936, and applying to stock rights what was said by the Supreme Court in *Koshland* v. *Helvering*, 298 U. S. 441, as to the nature and character of stock dividends, the Board has concluded that the issuance by the Manufacturers Trust Co. to its common stockholders of rights to acquire preferred shares constituted the payment of a dividend on the common stock. In my opinion, the Board has drawn inferences from section 115 (f) (1) that are not justified, and has attempted to apply the views expressed in *Koshland* v. *Helvering* to matters of an entirely different character and substance from that dealt with in that case.

The term "dividend" is defined by section 115 (a) of the statute, and the language of section 115 (f) (1) does not in any way indicate an intention on the part of Congress to extend the term "dividend" beyond the confines of section 115 (a). It merely provides that to the extent that stock rights do not constitute income within the meaning of the Constitution they are not to "be treated as a dividend." It appears, therefore, that section 115 (f) (1) does not expand but limits the scope of section 115 (a). Section 115 (a) defines a dividend as "any distribution made by a corporation to its stockholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made." Accordingly, the issuance of stock rights must first be found to be a distribution by a corporation to its stockholders in money or in other property and out of the earnings for the taxable year or earnings accumulated after February 28, 1913. Until and unless the issuance of stock rights is found to be such a distribution, there is no occasion to consider the applicability of section 115 (f) (1).

Citing *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247, for the proposition that a stockholder's rights to purchase new stock are "essentially analogous to a stock dividend", the Board concludes that the income tax effect of the issuance of stock rights parallels that of the payment of a stock dividend. In so doing, however, it has failed to consider the fundamental differences between stock rights and stock dividends or to show how the mere issuance by a corporation to its stockholders of a right to subscribe for and acquire additional shares, even though they be of a different class from the stock on which the rights were issued, effects any distribution "in money or in other property * * * out of its earnings or profits." Speaking of the effect of the issuance of stock rights, the Supreme Court, in that same *Miles* v. *Safe Deposit & Trust Co.* case cited in the majority opinion, said: "It is evident, we think, that such a distribution in and of itself constituted no division of any part of the accumulated profits or surplus of the company, or even of its capital."

The Board also cites and quotes from the opinion of the Supreme Court in *Palmer* v. *Commissioner*, 302 U. S. 63, to the effect that a sale of property by a corporation to its stockholders "if for substantially less than the value of the property sold, may be as effectively a means of distributing profits among stockholders as the formal declaration of a dividend." While our case does not involve the sale of any property by a corporation to its stockholders and that case did not involve the issuance by a corporation to its stockholders of rights to acquire additional shares of its own stock, but involved instead a distribution by a corporation to its stockholders of rights which it held to purchase shares of stock in an entirely different corporation, the Court in its opinion did discuss the nature and character of stock rights, and the views there expressed are in my opinion clearly applicable here. The Court said:

The mere issue of rights to subscribe and their receipt by stockholders is not a dividend. No distribution of corporate assets or diminution of the net worth of the corporation results in any practical sense. Even though the rights have a market or exchange value, they are not dividends within the statutory definition. Cf. *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923; *Helvering* v. *San Joaquin Co.*, 297 U. S. 496, 56 S. Ct. 569, 80 L. Ed. 824; *Helvering* v. *Bartlett*, supra. They are at most options or continuing offers, potential sources of income to the stockholders through sale or the exercise of the rights. Taxable income might result from their sale, but distribution of the corporate property could take place only on their exercise. * * *

It is to be noted in the instant case that, even though the stock rights here in question were later sold and the petitioner thereafter realized $13,728.04 from the sale thereof, we are not here determining the income effect of the sale of the rights or of their exercise, but the income effect of their issuance by Manufacturers Trust Co. and their receipt by the

petitioner. What was said by the Supreme Court in *Palmer* v. *Commissioner*, *supra*, as to the nature and character of stock rights, it seems to me, is fundamental. They were at the most options or continuing offers to the petitioner until sold or exercised, or until their expiration without sale or exercise, and in no sense of the word may be said to have been a distribution of corporate assets, earnings or capital, or to have resulted in the diminution of the corporate worth. These characteristics in my opinion make the pronouncements in *Koshland* v. *Helvering*, *supra*, wholly inapplicable, in that the issuance of the rights alone could in no sense give "the stockholder an interest different from that which his former stockholdings represented", and, as was said in *Miles* v. *Safe Deposit & Trust Co.*, *supra*, "the subscription right of itself constituted no gain, profit or income taxable without apportionment under the Sixteenth Amendment." Accordingly, I desire to note my dissent.

ARUNDELL, SMITH, BLACK, LEECH, and MELLOTT agree with this dissent.