OPINION. Bruce, Judge: The questions presented for decision are (1) whether the amount petitioner received as compensation for services rendered by way of a bargain purchase of his employer’s stock should be measured by the difference between the option price and the market price on the day the option was authorized or by such difference on the day the option was exercised; and (2) whether stock purchased by the corporation and delivered to petitioner in amounts equivalent to dividends declared on the optioned shares after the option authorization but prior to its exercise represents compensation to petitioner in addition to the optioned shares. Section 22 (a), Internal Revenue Code, and Regulations 111, section 29.22 (a)-1. With respect to the first issue, petitioner admits that the stock option was by way of compensation for services, but contends in the main that the option was property and as property he received something at the time it was authorized in 1944. Therefore, he contends, the date of authorization is the proper date to use in measuring the difference or spread between the option and the market price. The petitioner relies upon certain language of the Supreme Court in its opinion in Commissioner v. Smith, 324 U. S. 177. In that case the contention by the taxpayer was that an option issued and delivered to the taxpayer constituted “property” and consequently was income realized by him at that time. The Court stated: In certain aspects an option may be spoken of as “property” in tbe hands of the option holder. Cf. Helvering v. San Joaquin Fruit & Investment Co., 297 U. S. 496, 498, 56 S. Ct. 569, 570, 80 L. Ed. 824; Shuster v. Helvering, 2 Cir., 121 F. 2d 643, 645. When the option price is less than the market price of the property for the purchase of which the option is given, it may have present value and may be found to be itself compensation for services rendered. But it is plain that in the circumstances of the present case, the option when given did not operate to transfer any of the shares of stock from the employer to the employee within the meaning of § 22 (a) and Art. 22 (a)-1. Cf. Palmer v. Commissioner, 302 U. S. 63, 71, 58 S. Ct. 67, 70, 82 L. Ed. 50. And as the option was not found to have any market value when given, it could not itself operate to compensate respondent. * * * We cannot see where petitioner gains support for his contention from the above-quoted language. Here the petitioner asks that we treat the option as property and hold it to have been received, not when issued and delivered, but when authorized in a prior year by corporate resolution. We do not agree. Even if it could be held that on July 27, 1944, when the directors authorized the issuance of the option, such action vested the petitioner with certain fixed rights to acquire the stock at the option price (and the facts do not justify the conclusion), such rights would necessarily have to be shown to have a definite value when acquired, as pointed out by the Court in Commissioner v. Smith, supra. Moreover, if such showing of value were made that property would constitute income then realized by petitioner in the amount of such value. Petitioner, however, is here contending that the date of authorization be used only for purposes of valuation, the income from the receipt of such property to be determined as realized upon the exercise of the rights m the following year after the issuance and delivery of the option to him. Petitioner appears to base his contention upon a claim that the corporation was legally obligated to issue him the option by reason of a definite agreement to do so whereby the corporation secured his services. As to this there is not only no evidence of such an agreement but its existence cannot be reconciled with the written contract of employment of petitioner which is set out in our findings. Upon the question of value of such option on July 27, 1944, the date petitioner contends it should be treated as issued and delivered, the record is silent. Petitioner appears to assume that such value is a mere matter of computation of the difference between the option price and the then market price of the stock. Such is manifestly not the case. In the first place the resolution of 1944 only authorized the present optioning of one half of the stock here involved, the remaining one half to be covered by an option to be issued one year later and then only when authorized by another corporate resolution. This second option was provided to be issued only if petitioner was then employed by the corporation, his services had been satisfactory, and he still possessed the stock issued him under the prior option. The corporate resolution forbade assignment of any of the options except to another officer or employee of the corporation and then only with the consent of the corporation. These restrictions were made a part of the regular option issued by provision on the face of the printed option form. An option carrying such conditions and restrictions, in our opinion, makes impossible a determination of market value. Harold H. Kuchman, 18 T. C. 154; Burnet v. Logan, 283 U. S. 404; Commissioner v. Carter, 170 F. 2d 911; Westover v. Smith, 173 F. 2d 90. We think it clear under the facts disclosed that petitioner possessed no option as to the stock here in question until the issuance and delivery to him of such option. The exact date this was done is not shown. We merely know that it was between September 27, 1945, when the secretary-treasurer of the corporation was authorized to issue the option, and October 3, 1945, when the option was exercised by petitioner. For all we are advised, both issuance and delivery may have been on the latter date. When petitioner exercised the option, the corporation parted with and petitioner received the stock at a price of $3 per share which then had a market value of $33,875 a share. Petitioner then realized compensation through a bargain purchase measured by the difference between the price paid and the then market value of the stock. With respect to the second issue, petitioner contends that these 360 shares should be. considered as a stock dividend and should be considered as included with the 2,000 shares he was to receive when he exercised the option. Petitioner’s counsel has conceded that this position falls on bis failure to be sustained on the first issue. It might, however, be noted that these 360 shares were in lieu of an authorized cash payment by way of adjustment for cash and stock dividends in undisclosed proportions to stockholders at a period prior to when petitioner attained that status. Payment in such circumstances compels us to the conclusion that it was additional compensation for services in the amount of the fair market value of the 360 shares of stock when issued to petitioner. Decision will be entered for the respondent.