Tobacco Products Export Corporation, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 33541.   Promulgated January 29, 1954.

*John D. Graves, Esq.*, for the petitioner.
*William G. O'Neill, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The issue in this proceeding is whether the petitioner is entitled to a dividends received credit under section 26 (b), Internal Revenue Code,[1] on the proceeds received from the sale by it of Philip Morris stock rights. As a common stockholder in Philip Morris, the petitioner received rights to subscribe to the preferred stock of that corporation. Petitioner sold the rights in 1946

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(b) DIVIDENDS RECEIVED.—85 per centum of the amount received as dividends from a domestic corporation which is subject to taxation under this chapter, but not in excess of 85 per centum of the adjusted net income. The credit allowed by this subsection shall not be allowed in respect of dividends received from a corporation organized under the China Trade Act, 1922, 42 Stat. 849 (U. S. C., Title 15, c. 4), or from a corporation which under section 251 is taxable only on its gross income from sources within the United States by reason of its receiving a large percentage of its gross income from sources within a possession of the United States.

for $12,685.23. The petitioner reported this amount for tax purposes as capital gain. The respondent determined that the proceeds of this sale were taxable as ordinary income. Petitioner does not contest this determination but disputes the respondent's refusal to grant the dividends received credit in that amount. Thus, there is no disagreement over the taxability of the stock rights proceeds as ordinary income but there is a controversy over the question whether they are to be treated as a dividend for tax purposes and allowed as part of dividends received credit. The respondent relies upon *Palmer* v. *Commissioner*, 302 U. S. 63, 71, which states:

The mere issue of rights to subscribe and their receipt by stockholders is not a dividend. No distribution of corporate assets or diminution of the net worth of the corporation results in any practical sense. Even though the rights have a market or exchange value, they are not dividends within the statutory definition. Cf. Miles v. Safe Deposit & Trust Co., 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923; Helvering v. San Joaquin Co., 297 U. S. 496, 56 S. Ct. 569, 80 L. Ed. 824; Helvering v. Bartlett, supra. They are at most options or continuing offers, potential sources of income to the stockholders through sale or the exercise of the rights. Taxable income might result from their sale, but distribution of the corporate property could take place only on their exercise. * * *

The respondent's position is stated in G. C. M. 25063, 1947-1 C. B. 45, 47:

This office is further of the opinion that upon a sale of the rights ordinary income is realized by a stockholder in accordance with the principles set forth in the decisions in *Arthur O. Choate* v. *Commissioner, supra,* and *Helen W. Gibson* v. *Commissioner,* (133 Fed. (2d) 308) under the provisions of section 233 (a) of the Internal Revenue Code. It is not believed that the amount of such income is measured by the value of the rights at the time of receipt thereof. In the opinion of this office, the entire amount received upon the sale of the rights is taxable as ordinary income.

The cases referred to in the above statement were decisions by the Court of Appeals for the Second Circuit. *Choate* v. *Commissioner,* 129 F. 2d 684, held that preferred stock rights granted to common stockholders, which were exercised, gave rise to a taxable dividend measured by the spread between the fair market value of the preferred stock at the time the rights were issued and the option price. The court declared, in discussing *Palmer* v. *Commissioner, supra:*

But if, at the very time of the sale to or the contract with the stockholders, there was a substantial "spread" favorable to the stockholders, it will be considered that there was a corporate intention to distribute that spread, i. e., that a corporate distribution of earnings, and, therefore a dividend was intended. The situation is the same as if the company had sold the property to strangers and then distributed to its stockholders an amount of cash equal to that "spread." See Eastern Carbon Black Co. v. Brast, 4 Cir., 104 F. 2d 460.

\* \* \* \* \* \* \*

If, however, when the options are issued, there is a substantial "spread" favoring the stockholders, then a corporate intention to distribute corporate earnings

must ordinarily be regarded as existing. But the options are merely offers to distribute such earnings. Unless and until such an option is exercised, no distribution of corporate earnings occurs. Notwithstanding the option, the company's property and surplus are no less than they were before the options were issued. The options are potential dividends but, in and of themselves, are not dividends taxable under § 115. * * *

When such a favorable option is exercised, the corporate offer, embodied in the option, intentionally to distribute corporate earnings, is accepted by the stockholder. A taxable dividend—a taxable corporate distribution—then results.

* * * * * * *

True, petitioner, the stockholder who received the rights, did not himself exercise them, but gave them to members of his family who exercised them. However, precisely because the donees are members of his family, under Helvering v. Horst, 311 U. S. 112, 61 S. Ct. 144, 85 L. Ed. 75, 131 A. L. R. 655, as we have previously interpreted it, the taxable income must be regarded as the donor's. As aptly stated by Judge Magruder in Commissioner v. Bateman, 1 Cir., 127 F. 2d 266, 273, when explaining the Horst decision, "one who retains substantial ownership of the tree is taxable on the fruit thereof, despite his assignment to a donee of the right to pick the fruit."

For the following reason, we hold that the rules of the Palmer case are applicable here although there the rights covered stocks of other companies and here they covered the company's own unissued preferred stock: In Miles v. Safe Deposit & Trust Co., 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923, it was said that rights issued to its common stockholders, to subscribe to a company's unissued common stock, are analogous to stock dividends. Such stock dividends were not constitutionally taxable under Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. But under §115 (f) stock dividends are now taxable so far as such a tax is constitutional, and so are rights to the extent that they are dividends. A stock dividend in preferred stock issued to common stockholders is, therefore, now subject to a valid tax. Koshland v. Helvering, 298 U. S. 441, 56 S. Ct. 767, 80 L. Ed. 1268, 105 A. L. R. 756; Helvering v. Gowran, 302 U. S. 238, 58 S. Ct. 154, 82 L. Ed. 224; Strassburger v. Commissioner, 2 Cir., 124 F. 2d 315. Accordingly, an exercised right issued by the company here to its common to buy its unissued preferred was the equivalent of a validly taxable stock dividend—subject to the limitations as to the taxable spread heretofore noted.

* * * * * * *

The Commissioner argues that the rights are taxable whether or not they are dividends, i. e., without regard to § 115. We take this to be a contention that they are taxable under § 22 (a). But such a contention must fail for these reasons: In the Palmer case, the court held that rights were taxable when exercised, if they were dividends. There, because there was no "spread" when the rights were issued, the court held there was no dividend and therefore no tax. We interpret that case as holding that the rights were not taxable except as dividends, i. e., that they were not taxable except in so far as they were corporate distributions (dividends) under § 115. * * *

In *Gibson* v. *Commissioner*, 133 F. 2d 308, the same court held in affirming *Helen Whitney Gibson*, 44 B. T. A. 950, that preferred stock rights granted to common stockholders gave rise to taxable income of the amount of the market value of the stock rights when received upon

the sale of the stock. The taxpayer there received more than this market value when she sold the rights. The excess was treated by respondent as capital gain and was not in issue. The respondent included the market value of the stock rights on receipt as dividends. This Court and the appellate court affirmed, the Court of Appeals stating:

Following the Choate case we must say that there was no distribution of corporate earnings or profits when the rights were issued; their exercise was necessary to effect such a distribution. But the issuance of the rights gave Mrs. Gibson an option to obtain a distribution by exercise of it and this option she sold. Since the option gives a privilege of obtaining income to the extent of the spread between the market value of the stock at the time of the issuance of the option and the option price for the stock, the proceeds of sale, at least to this extent, constituted income. An analogy may be found in the sale of an unmatured interest coupon cut from a bond; the proceeds of such a sale would clearly be income. See Helvering v. Horst, 311 U. S. 112, 61 S. Ct. 144, 85 L. Ed. 75, 131 A. L. R. 655. * * *

The respondent in G. C. M. 25063, *supra*, declares that stock rights are taxable as dividends when exercised. In the present instance he seeks to tax the sale of such rights as ordinary income but not as dividends. The decisions referred to above determine whether a taxable dividend arose upon the sale or exercise of such rights. The taxation of stock rights under these decisions is related to the taxation of stock dividends. We are of the opinion that the proceeds of the sale of the stock rights in the present case, concededly being taxable as ordinary income, constitute dividends for purposes of dividends received credit. No other issue relating to the stock rights has been presented and we decide none.

The opinion promulgated on September 25, 1952, is accordingly modified.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

TURNER, *J.*, dissenting: According to section 115 (a) of the Internal Revenue Code, a dividend is a distribution by a corporation to its shareholders, in money or property, out of its earnings or profits, and in *Palmer* v. *Commissioner*, 302 U. S. 63, the Supreme Court held that there was no payment of a dividend, "within the statutory definition," through the mere issuance by a corporation of rights to subscribe to its stock and the receipt thereof by its stockholders, the reason being that there was no distribution of corporate assets or diminution of net worth in any practical sense; and further, that even though taxable income might result to the stockholders from the sale of the rights, there could be a distribution of corporate property "only on" the "exercise" of the rights. The conclusion in the instant case that

the petitioner received a dividend through the sale of the rights, even though there was not and might never be an exercise thereof and therefore no payment of a dividend, is not only anomalous, but is directly contrary to the pronouncements of the Supreme Court in the *Palmer* case.

I accordingly note my dissent.

MURDOCK, *J.*, agrees with this dissent.