John J. KALBAC and Dorothy Kalbac, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

John G. KISKE and Clara Kiske, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 16791, 16792.

United States Court of Appeals Eighth Circuit.

Jan. 25, 1962.

252

Donald E. Fahey, St. Louis, Mo., made argument for petitioner and was on the brief.

William A. Friedlander, Atty., Dept. of Justice, Washington, D. C. made argument for respondent and Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Washington, D. C. and Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., were with him on the brief.

Before SANBORN and VAN OOSTERHOUT, Circuit Judges, and GRAVEN, District Judge.

SANBORN, Circuit Judge.

The facts which gave rise to these petitions for review of decisions of the Tax Court are not in dispute. Francis J. Mulligan, President of the James Mulligan Printing Company, of St. Louis, Missouri, and owner of 198 of the 200 shares of its capital stock, died June 10, 1952. John J. Kalbac and John G. Kiske (who alone will be referred to as petitioners, their wives being nominal parties) had been for many years—Kalbac for about 30, and Kiske for 40—employees of the Company as well as business associates and close friends of Francis J. Mulligan. In his later years they virtually operated the business of the Company for him, and had been told by him, in effect, that they were to have the business upon his death. By the terms of Mulligan's will, each of them was granted a thirty-day option to purchase from his estate 89 shares of the capital stock of the Company for a sum equal to one-half of Mulligan's indebtedness to the Company at the time of his death. At that time he owed the Company $69,177.89. Petitioners had each previously acquired from him one share of the capital stock of the Company for $7,500. On July 1, 1952, each of the petitioners exercised the option granted him in the will of Mulligan, and acquired ownership of 89 shares of capital stock of the Company, by paying his estate one-half of $69,177.89.

On December 23, 1954, Kalbac surrendered his 90 shares of stock to the Company, and received a liquidation dividend of $202,785.40. On the same date, Kiske surrendered his stock, and received a like dividend of $202,797.69. At the time of Mulligan's death, the value of each share of stock was $1,250.

Each petitioner claims that he acquired his 89 shares from a decedent and that the basis for the determination of the long term capital gain resulting to him from the liquidation of the Company in 1954 was the fair market value of the stock at the time of Mulligan's death, or $111,250 for the 89 shares.

Section 1014 of the Internal Revenue Code of 1954 (26 U.S.C. § 1014), so far as pertinent, provides that

"(a) * * * the basis of property in the hands of a person acquiring the property from a decedent * * * shall * * * be the fair market value of the property at the date of the decedent's death";

and that

"(b) [f]or purposes of subsection (a), the following property shall be considered to have been acquired from * * * the decedent:

"(1) Property acquired by bequest, devise, or inheritance * *."

The Commissioner contends that the petitioners did not acquire any of the capital stock by will; that what each of them was bequeathed was an option to purchase 89 shares of such stock; and that the basis of the 90 shares of stock

which each petitioner surrendered to the Company on liquidation was the actual cost to him of the shares, or $42,088.94 ($34,588.94 plus $7,500). This was in reliance on Section 1012 of the Internal Revenue Code of 1954, which provides: "The basis of property shall be the cost of such property * * *."

The determination by the Commissioner resulted in a deficiency of $26,250 in the individual income tax of each petitioner for 1954. Each of them petitioned the Tax Court for a redetermination.

The Tax Court sustained the Commissioner, saying in its opinion (which is not reported):

"* * * We fail to see where petitioners acquired any shares of stock under Mulligan's will. What they acquired under the will was an option to purchase 89 shares of the stock of the corporation. They already owned one share of stock each; as to the cost to them of this one share, there is no dispute. An option to acquire property by purchase is certainly not the property itself. Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496, [56 S. Ct. 569, 80 L.Ed. 824]. We have no doubt that Mulligan in his will intended to grant petitioners the option to purchase the stock at prices which he thought were favorable to them. It is clear from the evidence that petitioners had been faithful and trusted employees of the Company for a long time and that Mulligan, who owned all the stock of the corporation except two shares, esteemed very highly the value of the services of petitioners. But these facts do not change an option to purchase the stock to a bequest of the stock."

The Tax Court also cited in support of the Commissioner's position, Mack v. Commissioner of Internal Revenue, 3 T. C. 390, affirmed, 3 Cir., 148 F.2d 62, cert. denied 326 U.S. 719, 66 S.Ct. 23, 90 L.Ed. 425.

In Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496, 56 S.Ct. 569, 80 L.Ed. 824, the question, as stated by the Supreme Court, was: "Is real property 'acquired,' within the meaning of the revenue acts, when a lease is made containing an option to purchase, or when the option is exercised?" The lease was made in 1906; the option in the lease to purchase the leased land for $200,000 was exercised November 30, 1916. The taxpayer contended that the lessee, because of the option acquired a property interest in the land prior to March 1, 1913, and that the value of the land at that date was the basis for calculating gain on sales made after the title to the land had been actually acquired through the exercise of the option. The Supreme Court said (pages 498 and 500 of 297 U.S., 56 S.Ct. page 570):

"We hold that the respondent acquired the property on November 30, 1916. The option itself was property, and doubtless was valuable. If it had been assignable, and the lessee had sold it at a profit, taxable gain would have resulted from the sale. But the option is admittedly not the same property as the land. So conceding, the respondent still insists that ownership of the option created an interest in the land. * * *

"* * * The capital asset, sale of which resulted in taxable gain, was the land. This was not an asset of the taxpayer prior to the exercise of the option. We think it clear that there was no combination of two capital assets,—the option and $200,-000 of cash, to form a new capital asset, the land, which was subsequently sold at a profit. * * *"

Virtually the same problem that is presented in the instant case was before the Tax Court in the Mack case, 3 T.C. 390. There, the Tax Court held that Mack, who exercised an option, given him by will, to purchase shares of stock from testamentary trustees at one-half their average market value, and who sold the stock at a profit, had a basis, for determining gain, equal to the amount he paid for the stock, and was not entitled to a

basis consisting of that amount plus the value of the option at the time of the testator's death. The Circuit Court of Appeals for the Third Circuit, in the Mack case, 148 F.2d 62, in affirming the decision of the Tax Court, said:

"Petitioner insists that the cost of the shares to him, was the cash he paid, plus the value of the option which he exercised; and were the case of first impression, this contention would doubtlessly appear to be fortified by able and persuasive reasoning of counsel. But this issue has been determined adversely to petitioner's contention in Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496, 56 S.Ct. 569, 80 L.Ed. 824."

Counsel for the Commissioner, during the oral argument of this case, raised the question whether the San Joaquin Fruit & Investment Co. case, which the Third Circuit thought controlled decision of the Mack case, actually precludes the petitioners from having a more favorable basis for the calculation of gain. At our request, counsel for the Commissioner furnished us with a supplemental memorandum, expressing the view that to allow a taxpayer in the position of petitioners a basis equal to the fair market value of the option, acquired by bequest, at the date of the testator's death plus the amount paid in exercising the option, might be legally permissible. Counsel say in the last paragraph of their supplemental memorandum:

"As stated in the course of oral argument, the Commissioner is of the view that, so long as Mack v. Commissioner, supra [148 F.2d 62], remains the only judicial pronouncement on this question, he is not free, administratively, to allow to any taxpayer the right, in computing his basis in property purchased through the exercise of an option taken by bequest, to add his Section 1014 basis in the option to the cash price paid. However, in view of the unusual factors which led to this decision and the doubtful propriety of the rule thus established, the Commissioner interposes no objection to a reconsideration by this Court of the entire question in the light of those factors or, alternatively to a remand to the Tax Court for such consideration. * * "

The question raised by counsel for the Commissioner was not presented to the Tax Court or considered by it. We think it should first be presented to that court for decision. If there is any more favorable basis to which the petitioners legally may be entitled, we think they should have it. No doubt, if Francis Mulligan had realized the tax consequences to petitioners of granting them in his will an option to buy at a low price the stock of his Company, he would, instead, have left the stock to them outright, subject perhaps to a lien or charge in favor of his estate to the extent of his indebtedness to the Company.

We shall affirm the decision of the Tax Court in so far as it determines that *the shares of stock* of the James Mulligan Printing Company acquired by petitioners after the death of Francis J. Mulligan were not acquired by "bequest, devise, or inheritance" from him. The decision of the Tax Court, in so far as it sustains the Commissioner's computation of the deficiency in income tax of each petitioner, will be vacated and the case remanded to the Tax Court to enable it to consider and determine whether the petitioners are legally entitled to a more favorable basis for ascertaining capital gain on the shares acquired by them by the exercise of the option granted them in the will of Mulligan. It is so ordered.