## HOWE P. COCHRAN *vs.* LORRAINE MFG. CO.

JULY 8, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

SWEENEY, J. This action of the case in assumpsit is before this court on plaintiff's bill of exceptions. The first exception considered is the one to the ruling of the trial justice in the Superior Court directing the jury to return a verdict for the defendant at the close of the testimony.

Plaintiff brought this action to recover $250,000 as compensation for services in adjusting certain tax matters for defendant with the United States. The facts and circumstances leading up to the contract, which is the basis of this

action, are as follows: Defendant was represented by its president, James R. MacColl, and its assistant secretary, William H. Rawson, in its dealings with plaintiff. The first contract between the parties was made in 1921. July 7, plaintiff wrote to the defendant stating what he would charge for fully attending to defendant's federal income tax work. The terms stated were $2,000 cash and an additional charge which would not exceed 10% of the amount saved over the tax. In addition, plaintiff's expenses were to be paid while he was away from Washington on this matter. Plaintiff wrote: "It is quite likely that your benefits will be large and in no event will our charge exceed $15,000." August 3, defendant, acting by Mr. MacColl, replied by writing:

"Lorraine Manufacturing Co.
Pawtucket, Rhode Island.
August 3, 1921.

Mr. H. P. Cochran,
   c/o Messrs. Montgomery, Cochran & Moore,
     Millbury, Mass.

Dear Sir:

Referring to your favor of July 7th, we do not like the form of compensation which you suggest; namely, a percentage based on a computation which is indefinite and not yet made, nor do we like a cash payment when you start work, as it is surely very unusual. We should be willing to consider a percentage basis on any actual refund of taxes that we have already paid to the Government.

We wish you would give this matter further consideration and see if there is any basis on which we can get together in a way that would be mutually satisfactory.

Yours very truly,
J. R. MacColl,
President."

August 10, plaintiff wrote to defendant: "We agree to attend to your Federal Income Tax matters for the years 1917, 1918 and 1919 and through February, 1920 . . . upon the following terms: We will do the necessary audit and will appear for you in Washington whenever necessary, and follow the matter to a conclusion for a fee of $10,000 payable $2,000 cash, $3,000 when we submit to you our computations for the years in question, and $5,000 when the matter has been reviewed and settled by the Federal Income Tax Bureau."

August 12, defendant, acting by Mr. MacColl, replied by writing: "We confirm the agreement referred to in your favor of the 10th inst. and ask you to proceed as soon as possible with the work."

Plaintiff entered upon the performance of the work required by his proposal of August 10. October 4, 1923, he wrote to defendant that when he made his proposal in 1921 he was not aware of certain facts and that, on account of these facts he had been put to great expense and asked for an additional retainer of $1,000 for the year 1921 and $1,500 for the years 1917, 1918 and 1919. October 11, 1923, Mr. Rawson sent plaintiff a check for $2,500 in response to this request for payment. In 1924, plaintiff was still engaged on the work which he had agreed to perform by his letter of August 10, 1921.

June 11, 1924, plaintiff and defendant's agents had a conference in which they discussed additional work to be done for the defendant. Plaintiff claimed that the $10,000 he was to receive for the work undertaken by his contract of August 10, 1921, was inadequate on account of the great expense he had been put to by the failure of defendant to disclose certain facts to him. Mr. MacColl demanded an apology from plaintiff for writing a letter in which he stated he had not been fairly dealt with. As a result of this conference Mr. Rawson wrote a letter to the plaintiff setting forth the terms of a new contract which is the foundation of the present action. The letter is as follows:

"June 12, 1924.

DEAR MR. COCHRAN:

We note below, particulars of the proposition made to you at the office of Edwards & Angell, Providence, on the afternoon of June 11, 1924, and which, we understand, you accepted as the basis of an agreement for the further handling of our federal tax matters.

In settlement of our original agreement with you, as set forth in your letter of August 10, 1921, for $10,000, covering adjustment of our federal tax matters through February 28, 1920 and on which we have paid you to date $5,000, we shall pay you at once an additional $3,000 the balance of $2,000 to be paid at such time as the refund for the period above mentioned shall have been finally determined and definitely refunded or applied by the Department against specific tax assessments.

For the preparation of amended consolidated returns for Lorraine Manufacturing Company and affiliated companies for the remaining ten months of 1920 and the calendar years 1921, 1922 and 1923, and your work in maintaining consolidation with Lortex Company and Selros Dress Fabric Company, Inc., if possible, we propose to pay you $2,000 now, $2,000 when the amended returns, with proper claims, are completed and filed, and $2,000 when the adjustments for the ten months period ending December 31, 1920 and the fiscal year ending December 31, 1921 are completed, and final credits or refunds secured and definitely applied against our tax assessments. In addition, we propose to pay you $2,000 if the consolidation of Lortex Company and Selros Dress Fabric Company, Inc., with Lorraine Manufacturing Company is maintained.

As has been previously stated, the matter of

compensation, both under the previous agreement as per letter of August 10, 1921 and the arrangements above mentioned for the continuation of the tax work, may be reviewed when final settlement, as indicated, has been secured, and if you feel that the work done and the results accomplished entitle you to additional payments, the matter will be given fair consideration, but it is understood that the decision is to be entirely in our hands.

Yours very truly,

Lorraine Mfg. Co.,

W. H. RAWSON."

June 18, 1924, plaintiff answered as follows:

"GENTLEMEN:

I have your letter of June 12 and agree to the proposition contained therein.

Thanking you very much I am,

Yours respectfully,

H. P. COCHRAN."

Plaintiff completed the work required by these letters by April 2, 1926, when defendant wrote to him as follows:

"Replying to your favor of March 17th, our record shows that we owe you $2,000, to complete payments in accordance with various agreements that have been made in connection with your tax work for us. Will you kindly let us know if we are in accord on this figuring.

Mr. MacColl proposes to send you an additional check as a bonus."

Plaintiff replied April 5, by writing:

"I have your letter of April 2. I believe you are right that there is $2,000 due to complete the payments as per contract. I did not bill you for this as I was not to bill you until the final determination which was made recently.

This confirms what I told you Saturday."

Defendant wrote to plaintiff April 9, as follows:

"We are enclosing, herewith, check for $4,500 representing balance of $2,000 in completion of payments, as per agreements with you, and a bonus of $2,500 in recognition of the satisfactory adjustment which you have obtained for us in our Federal Tax matters."

April 19, 1926, plaintiff wrote to defendant:

"I received the check for $4,500 being $2,000 to close out the account and $2,500 bonus and thank you very much.

I want to express my gratitude to Mr. MacColl and to you for the generous treatment in this matter."

The same day plaintiff wrote to William B. MacColl, treasurer of defendant:

"I received a check from the Lorraine Manufacturing Company containing $2,500 bonus and I want you to know that I am very grateful to you for your generosity.

It has been a great pleasure to work for the Lorraine Manufacturing Company and for you and I am glad that I was able to accomplish something in your tax matters."

The check for $4,500, which included the final $2,000 and the bonus of $2,500, was dated April 9, 1926 and was duly deposited by plaintiff. The same day plaintiff wrote another letter to the defendant in which he said that he had a plan by which he could get about $2,500 additional for defendant and suggested that he be allowed three-fourths of this refund for additional compensation for his work on the whole job. Defendant replied by saying that it had assumed that plaintiff's work had brought about a complete adjustment of its tax matters and asked for information about this new tax matter.

Plaintiff replied by letter dated April 28, 1926 in which he stated the new tax matter was based upon a new ruling

and concluded by writing: "I was surprised to have you write back wondering why the whole work was not cleaned up, so I conclude the best thing to do is to drop the whole thing." Nothing further was heard from the plaintiff until April 22, 1927 when James R. MacColl received from plaintiff a personal letter in which he complained that he had not been properly compensated for his work and asked for "some fair adjustment" although he realized he had no legal rights to demand more compensation. No reply was made to this letter and this action was commenced.

The declaration contains seven counts. Five of the counts are based upon the allegation that the defendant agreed to pay the plaintiff what his services were reasonably worth. These five counts cannot be considered as it is well established law that there can be no implied contract where there is an express contract between the parties in reference to the same subject matter. 13 C. J. 243.

The written contracts referred to in the first and seventh counts were introduced in evidence. During the trial plaintiff took many exceptions to the admission or exclusion of testimony. The bill of exceptions specifies forty exceptions. Plaintiff claims that these exceptions present seven questions which have been stated and argued in his brief. We have carefully read and considered these questions. In our opinion the only material exception is the one to the ruling of the trial justice directing the jury to return a verdict for the defendant.

At the close of the testimony the trial justice ruled that the contract made by the proposition contained in defendant's letter dated June 12, 1924, and its acceptance by plaintiff by letter dated June 18 constituted the contract between the parties; that the contract was not ambiguous; that its construction was a matter of law for the court and that, as it appeared that defendant had paid the plaintiff the full amount due under the contract, he had no legal claim against defendant and consequently directed a verdict for it.

Did the trial justice err in this ruling? This court has

repeatedly held that when the terms of a contract are clear its construction is for the court. *Hatch* v. *Sallinger*, 47 R. I. 395 and cases cited; *Gross, Tr.* v. *Clark et al.*, 43 R. I. 389; *Newport Water Works* v. *Taylor*, 34 R. I. 478; *Harrington* v. *Law*, 90 Atl. 660. The primary rule in the construction of contracts is for the court to ascertain and give effect to the mutual intention of the parties, *Wholey Boiler Works* v. *Lewis*, 45 R. I. 441; 13 C. J. 521, and in construing a written contract the words used will be taken in their ordinary and popular sense. *Butler Exchange Co.* v. *Fess Rotary Oil Burner Co., Inc., et al.*, 125 Atl. 360.

Having in mind these elementary rules for the construction of contracts, we will consider the contract involved in this case. We are unable to discover any ambiguity in defendant's proposal of June 12 and none has been pointed out by the plaintiff. He had been working on defendant's tax matters for several years and presumably knew all about the work he was undertaking to perform. The amount of money to be paid to him was clearly stated in the proposal. Plaintiff agreed that, if additional compensation was to be given to him for his work, the decision as to this gift was to be entirely in the discretion of the defendant. Defendant knew that plaintiff had said that he was entitled to greater compensation than he had fixed for doing the work under the first contract. Defendant evidently wished to have no misunderstanding as to the amount to be paid to plaintiff for any work done by him. This is made manifest by defendant's letter of August 3, 1921 rejecting plaintiff's proposal to do the proposed work on a percentage basis, the defendant saying: "We do not like the form of compensation which you suggest; namely, a percentage based on a computation which is indefinite and not yet made." Plaintiff then offered to do the work for a definite sum of money. By refusing to accept the ambiguous terms for payment contained in plaintiff's original proposal, defendant probably avoided liability for the large payment which plaintiff is seeking to obtain in this action. No prin-

ciple of law is better established than the one which declares that parties are bound by their contracts when fairly and honestly made. Plaintiff does not attempt to impeach the contract on the ground of fraud. Defendant paid the plaintiff the full amount due under his two contracts and at the conclusion of his work gave him a bonus or present of $2,500, in recognition of the satisfactory results of his work. Plaintiff not only thanked the defendant for this gift but also expressed his gratitude to Mr. MacColl for his generous treatment in the matter and in addition wrote a letter expressing his gratefulness to William B. MacColl. At the trial plaintiff attempted to explain these letters by saying that they were written in a spirit of sarcasm. This is an attempt to explain the inexplicable. The intention of the plaintiff in writing the letters must be deduced from the words used in them. There is nothing in the letters showing they were written in a sarcastic or ironic vein. Regardless of the later feeling of the plaintiff towards James R. MacColl, there is nothing in the record showing why the plaintiff's letter of gratitude to William B. MacColl should be understood in any sense other than that expressed.

As the evidence shows that defendant has paid the plaintiff all of the money that it agreed to pay him by the clear terms of their contract, it follows there was no error in the ruling of the trial justice directing the jury to return a verdict for the defendant.

All of the plaintiff's exceptions are overruled. The case is remitted to the Superior Court for the entry of judgment on the verdict as directed.

*Walling & Walling, Everett L. Walling, Lester S. Walling, Ambrose W. Carroll,* for plaintiff.

*William H. Edwards, Edward Winsor, Edwards & Angell,* for defendant.