**Leonard D. LAWRENCE, Plaintiff,**

v.

**John A. O'CONNELL, as District Director of Internal Revenue, Defendant.**

**Civ. A. No. 1759.**

United States District Court
D. Rhode Island.
March 16, 1956.

Harvey S. Reynolds, H. L. Weller, Helen M. MacGregor, Providence, R. I., for plaintiff.

H. Brian Holland, Asst. U. S. Atty. Gen., Andrew D. Sharpe, Ethan B. Stroud, Attorneys, Dept. of Justice, Washington, D. C., Joseph Mainelli, U. S. Atty., Providence, R. I., for defendant.

DAY, District Judge.

This is an action in which the plaintiff seeks to recover the sum of $48,722 with interest thereon since June 30, 1954, being the amount of income taxes which he alleges were erroneously and illegally assessed against and exacted from him for the calendar year 1951.

In his return the plaintiff claimed a deduction of $50,000 as a non-trade and non-business expense under Section 23 (a)(2) of the Internal Revenue Code of 1939, 26 U.S.C. § 23(a)(2). This deduction was disallowed and the assessment, which the plaintiff claims was erroneous and illegal, was then made.

The testimony and exhibits introduced at the trial to the Court established the following: Prior to October 1, 1951, the plaintiff was the owner of 15% of the outstanding capital stock of Bostitch, Inc., a Rhode Island corporation, his holdings consisting of 42,225 shares of the Class A common stock and of a like number of shares of the Class B common stock; his sister, a Mrs. Small, also owned 15% of the outstanding capital stock, and a cousin, a Mrs. Lumsden, who lived in Scotland, owned 11¼% thereof. His long-time business associate and friend, one Arthur H. Maynard, a resident of Westerly, Rhode Island, owned 5%.

The evidence further establishes that for some months prior to October 1, 1951, there had been talk among the stockholders of Bostitch, Inc., of the advisability of a merger of that corporation with some other corporation, and that

the President of Bostitch, Inc., under whose management the business of that corporation had prospered greatly, was active in urging such a merger; that under the corporation law of Rhode Island the affirmative vote of the holders of 66⅔% of the outstanding capital stock was necessary to effectuate such a merger; that Mrs. Small and plaintiff were unalterably opposed to the merger but that their combined holdings were insufficient to block a merger if one were actually proposed and desired by the balance of the stockholders; that the plaintiff was advised that a merger would be detrimental to his position and would depreciate the value of his holdings.

Although there were some discrepancies in his testimony, the plaintiff insisted he was not certain prior to October 1, 1951, of the position of his cousin, Mrs. Lumsden, with respect to the merger and as a result, upon the advice of his financial expert and his attorney, he decided to endeavor to obtain a proxy from Maynard to vote the latter's stock. He stated that upon the advice of his financial expert he offered him $50,000 for his proxy; that this offer was later accepted and an agreement was executed by him and Mr. Maynard on October 1, 1951. This agreement recites a nominal consideration of $10, although the amount paid thereunder by the plaintiff to Maynard is conceded to be $50,000. It contained the following clauses:

1. Mr. Maynard hereby constitutes and appoints Mr. Lawrence and his heirs, executors and administrators, attorney and proxy for Mr. Maynard, in his name, place and stead, to vote on all of the capital stock now held or hereafter acquired by Mr. Maynard in Bostitch, Inc. (a corporation of the State of Rhode Island), according to the number of votes that Mr. Maynard would be entitled to vote if personally present in the transaction of all business that shall come before any and all meetings of the stockholders of said corporation, with all the powers that Mr. Maynard would possess if personally present. The proxy hereby granted is irrevocable and shall continue throughout the lifetime of Mr. Maynard; and Mr. Lawrence is hereby granted full power to substitute another or other persons or corporations to act as such proxy in his place and stead, either for a particular meeting or for a particular period of time or indefinitely, and in the event of the death of Mr. Lawrence, his executors or administrators are hereby granted the same powers and rights during the period of the administration of his estate, and thereafter such person, persons, or corporations as shall become entitled to any similar stock owned by Mr. Lawrence at the time of his death shall possess the same powers and rights, as such attorney and proxy, so long as Mr. Maynard shall live.

2. Mr. Maynard hereby grants unto Mr. Lawrence and to such person, persons or corporations as shall become entitled to Mr. Lawrence's stock as aforesaid (for the same consideration) the option to purchase from the executors or administrators of the estate of Mr. Maynard any or all of the capital stock of said Bostitch, Inc., upon payment to such executors or administrators for each share so purchased a sum equal to the book value thereof as shown by a certified audit of the books of said corporation, made by a certified public accountant as of a date within 30 days of the death of Mr. Maynard, plus a sum equal to (⅔) of such book value; such option to be exercised (if at all) within six months next following the date of Mr. Maynard's death, by written notice to said executors or administrators.

3. Mr. Maynard warrants that at present he is the sole owner of 14,075 shares of Class A and 14,075 shares of Class B stock of said Bostitch, Inc.; and he hereby agrees that he will not, nor will his execu-

tors or administrators, transfer, assign or pledge or in any way encumber any of said shares of stock during his lifetime or within the period of six months after his death, without the prior written authorization of such person, persons or corporations as shall then be entitled to act as such attorney and proxy or to exercise such option to purchase, as the case may be; and Mr. Lawrence agrees to grant such authorization in each instance in which the transferee of such stock shall execute and deliver to Mr. Lawrence a proxy and option agreement similar to this instrument.

4. Mr. Maynard agrees to sign and deliver to Mr. Lawrence such supplementary simple forms of proxy as may be required from time to time for presentation at stockholders' meetings.

5. The agreements set forth herein on the part of Mr. Maynard shall be binding upon himself and his heirs, executors, administrators and assigns, and shall inure to the benefit of the heirs, executors and administrators of Mr. Lawrence and of such person, persons or corporations as shall have acquired after the death of Mr. Lawrence such right to act as attorney and proxy or such right to exercise the preceding option.

6. In the event that Mr. Maynard shall receive any shares of capital stock, rights to subscribe to shares of capital stock, bonds, debentures or other securities (all hereinafter referred to as "new securities"), as a result of any corporate merger, consolidation or re-organization of or court order affecting Bostitch, Inc., or any successor corporation, or as a result of any exchange, distribution or offer by Bostitch, Inc., or any successor corporation (whether such new securities shall be those of Bostitch, Inc., or of any other corporation, trust or partnership), such new securities shall become subject to the terms of this agreement upon receipt thereof by Mr. Maynard, in all respects as if such new securities were the shares of capital stock of Bostitch, Inc., hereinabove referred to; provided, however, that if Mr. Maynard shall at any time desire to sell any such new securities, he may notify Mr. Lawrence of such desire together with the lowest price at which he is willing to sell the same, whereupon Mr. Lawrence shall have an option to acquire such new securities as Mr. Maynard shall desire to sell at the price so stated, which option shall be exercised (if at all) within a period of ten days from the receipt of such notice, and if not so exercised within said period, Mr. Maynard shall be at liberty to sell such new securities for not less than the price so stated, regardless of any other provisions contained in this agreement.

7. In the event that the executors or administrators of Mr. Maynard's estate shall desire to sell to Mr. Lawrence or his executors or administrators any of the shares of Class B stock of Bostitch, Inc., held by them as an asset of Mr. Maynard's estate, such executors or administrators shall have the option to offer such Class B shares to Mr. Lawrence or his executors or administrators within a period of 12 months after the date of Mr. Maynard's death, and Mr. Lawrence or his executors or administrators upon receipt of such offer shall be obliged to purchase and pay for the same at the price determined by the formula set forth in Paragraph 2 hereof, up to but not exceeding the amount of the Federal estate taxes payable upon Mr. Maynard's estate. Such purchase and payment shall be consummated within 60 days from the receipt by Mr. Lawrence or his executors or administrators of said offer of the executors or administrators.

Four days after its execution there was a meeting of the Directors of Bostitch, Inc. An excerpt from the minutes of this meeting, introduced at the trial, indicates that the President recommended that owing to the lack of interest by the stockholders in any possible merger no further action be taken at that time and "that the directors unanimously agreed". There was no evidence that any action with respect to a possible merger was ever taken subsequently by the directors or the stockholders.

At the time of the trial of this action the plaintiff was still the holder of the proxy and option obtained by him under said agreement. Neither of the parties hereto called Mr. Maynard as a witness.

The plaintiff contends that his payment of $50,000 was properly deductible by him from his gross income in his return for the year 1951 as an ordinary and necessary expense paid for the production or collection of income or for the management, conservation or maintenance of property held for the production of income within the meaning of Section 23 (a) (2) of the Internal Revenue Code of 1939.

On the other hand, the government contends that the payment by the plaintiff was for the acquisition of a capital asset within the meaning of Section 117 (a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117(a) and that the cost thereof was not deductible. It further contends that since the plaintiff acquired an option under said agreement, any loss resulting from failure to exercise it must be considered as a short term capital loss. Lastly, the government contends that if the plaintiff's expenditure is not deemed to have been for the acquisition of a capital asset, it was not "ordinary and necessary" within the meaning of Section 23(a) (2).

During the trial the parties stipulated that whatever rights or property the plaintiff acquired under said agreement of October 1, 1951, were not within the exclusions from the meaning of the term capital assets as defined in Section 117 (a) (1) (A) of said Code as being part of the stock in trade of a taxpayer or property held primarily for sale to customers in the ordinary course of his trade or business.

An income tax deduction is a matter of legislative grace and the burden of clearly showing his right to the deduction claimed by him rests upon the taxpayer. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607; New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Davis v. Commissioner, 8 Cir., 151 F.2d 441.

Here the burden was upon the plaintiff to prove the deduction claimed by him was within those permitted by Section 23(a) (2).

Plaintiff contends that his agreement of October 1, 1951, was merely for the purchase of a proxy, that the proxy was the sole consideration for which he paid the $50,000 and that the option granted therein was merely in aid of the proxy in order that it would be irrevocable and not be terminable by the death of Maynard.

The legal effect of what men do is not to be determined by the names which they affix to their deeds. The essential nature of their acts is the determinative factor. Pan-American Bank & Trust Co. v. National City Bank, 2 Cir., 6 F.2d 762. "The character of an instrument depends upon its effect, since courts look to the real nature of an agreement, and not at all upon what the parties call it". Cook v. Ball, 7 Cir., 144 F.2d 423, 431; certiorari denied 323 U.S. 761, 65 S.Ct. 93, 89 L.Ed. 609.

When the terms of a contract are free from ambiguity, its construction is for the court. Wholey Boiler Works v. Lewis, 45 R.I. 441, 123 A. 595; Cochran v. Lorraine Mfg. Co., 52 R.I. 17, 155 A. 572; Davis Co. v. Shepard Co., 71 R.I. 499, 47 A.2d 635; Wm. J. Lemp Brewing Co. v. Ems Brewing Co., 7 Cir., 164 F.2d 290.

The language of the agreement of October 1, 1951, is free from ambiguity and

its legal effect is crystal clear. Under it the plaintiff acquired a proxy to vote Maynard's stock with full power of substitution which passed to the transferees of any of the stock owned by the plaintiff at the time of his death. He also acquired an option which was assignable by him to purchase from the executors or administrators of Maynard's estate any or all of the shares owned by him at any time within six months after his death at a price of ⅞ths of the book value of such shares calculated within 30 days after his demise. By its terms the agreement obligated Maynard and his executors or administrators to refrain from assigning or pledging or encumbering said shares in any way during his lifetime or within six months thereafter. The agreement also contains in clauses 6 and 7 thereof provisions concerning the issue of any "new securities" resulting from any merger, consolidation or re-organization involving Bostitch, Inc., or any successor corporation and obligating the plaintiff or his executors or administrators in the event of Maynard's death to purchase a certain number of Class B common shares at a price of ⅞ths of their book value as determined within 30 days after his death.

▮▮▮▮ It is clear that under his agreement the plaintiff acquired not only a proxy but also an option to purchase Maynard's stock at a stipulated price upon his death and certain other rights. Plaintiff would have me disregard these additional legal effects of his agreement. This I am not prepared to do. In determining questions of taxation the substance of the things done and not the form which they took must govern. The declared purpose of the participants is not controlling. Snowden v. McCabe, 6 Cir., 111 F.2d 743.

The option obtained by the plaintiff was assignable. It was of value and was certainly property. Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496, 56 S.Ct. 569, 80 L.Ed. 824. It was in my opinion a capital asset within the definition contained in Section 117(a) (1) (A) of the Internal Revenue Code of 1939. "Capital assets" as used therein means property held by a taxpayer except for certain exclusions not pertinent here. The term is not to be given a narrow or restricted meaning. Lynch v. Alworth-Stephens Co., 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660; Jones v. Corbyn, 10 Cir., 186 F.2d 450. Similarly, when used in the tax laws the word "property" is not to be given a narrow or technical meaning. Jones v. Corbyn, supra; Citizens State Bank of Barstow, Texas v. Vidal, 10 Cir., 114 F.2d 380.

The plaintiff elected to purchase a capital asset as well as a proxy. The cost of the former was clearly not deductible under Section 23(a) (2) as a non-trade or non-business expense. Since no evidence was presented by which it is possible to divide the consideration of $50,000 and determine what part of it was paid for the option, the entire consideration must be treated as a capital expenditure. Cf. Exposition Souvenir Corp. v. C. I. R., 2 Cir., 163 F.2d 283; Stuart Company v. C. I. R., ¶ 50,170 P–H.T.C. Memo. affirmed 9 Cir., 195 F.2d 176.

My conclusion in this regard makes it unnecessary for me to consider the other arguments advanced by the government.

The cases cited by the plaintiff involved factual situations manifestly distinguishable from the factual situation in this case and in my opinion do not apply here.

I find that the plaintiff has failed to sustain the burden of proving that he was entitled to the deduction claimed by him under Section 23(a) (2) or to any part thereof. Judgment shall be entered for the defendant.