398 A.2d 1137.

Paula L. Abedon vs. Herbert J. Abedon.

MARCH 14, 1979.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.   This matter comes before us on cross-appeals from a decree of the Family Court entered on February 10, 1977, in response to separate motions by the parties to hold each other in contempt for failure to abide by the terms of a property settlement agreement.

The parties are Paula L. Abedon (the wife) and Herbert J. Abedon (the husband), who were divorced by a final decree entered in the Family Court on March 11, 1977. The subject of the present dispute is the property settlement agreement (agreement) dated February 24, 1976, which was incorporated in the interlocutory decree of divorce entered in the Family Court on March 5, 1976.

The first element in the dispute related to the interpretation of "Paragraph Fourteenth" of the agreement, which reads as follows:

> "*FOURTEENTH:* This agreement hereby affirms the fact that any property received as an inheritance by the wife from her mother's estate is, shall be and remain her own property free from any claim of the husband. The wife hereby releases for both civil and criminal liability, which liability is hereby denied, any claims the wife may have in reference to the husband's handling of the estate of the wife's mother both as trustee and co-executor and both parties are to give general releases to each other upon the execution of this agreement."

Pursuant to the foregoing paragraph, the husband sought in the Family Court to obtain a release from the wife for all alleged wrongdoing, including any claims relating to his management as trustee of an *inter vivos* trust created by the wife's mother, Mollie E. Levin, for her own benefit. Mollie named the husband and the Industrial National Bank of Rhode Island (the bank) as cotrustees of both the *inter vivos* trust and a testamentary trust for the benefit of her son, David Levin. She also appointed the bank and the husband as coexecutors of her will. Mollie did not create any trust for the benefit of the wife.

In response to her husband's contention, the wife claimed that she was only required to execute a release of claims concerning the testamentary estate as opposed to the *inter vivos* trust. The trial justice accepted the wife's contention and ruled that she was required to execute a general release only in relation to the testamentary estate.

"Paragraph Twelfth" of the property settlement agreement required the husband to pay the wife the sum of $1,200. The husband admitted this obligation but sought to establish, as a setoff, payments which he made in respect to the parties' liability under their joint federal income tax return for the year 1975. The husband contended that income from the wife's securities was responsible for $1,243.70 relating to this tax liability. The trial justice refused to consider matters outside the ambit of the property settlement.

The husband further claimed that by refusing to divide approximately 356 shares of non-certificate Harbor Fund stock, the wife violated the general provisions of the agreement requiring all property to be divided equally between them. The wife contended that these shares should be her sole property, because the husband failed to list them in Exhibit D of the agreement. She cited in support of this argument "Paragraph Twenty-One" of the agreement which states in pertinent part:

> "[H]e neither now owns or possesses any property of any kind or description whatsoever, other than those items of property specifically set forth in exhibits attached hereto * * *."

> "[I]n the event it is discovered and determined after this agreement that he has failed to divulge to the wife the existence of any items with respect to his financial condition, assets, liabilities, capital, income and expenses as of the date of this agreement within three years prior thereto, all of such property, if still in existence, will be delivered to the wife as her separate property."

It is undisputed that the husband did not include in the list attached to the property settlement the 356 shares of non-certificate Harbor Fund stock. It is also undisputed, however, that the non-certificate stock resulted from reinvestment of dividends from certain certificate shares of Harbor Fund which stood in the name of the wife alone. Since 1974, the statements concerning reinvestments of

dividends and the accumulation of non-certificate shares have been sent to the wife at her home address. The husband testified without contradiction that he did not know of the non-certificate shares, because he had no recollection of the transaction which gave rise to this reinvestment. He did list the certificate Harbor Fund shares in a very comprehensive listing of securities held by both of the parties. The list covers a number of pages and includes a great quantity of stocks and bonds. The trial justice ordered the wife to transfer 50 percent of the shares of Harbor Fund to the husband, including one-half of the non-certificate shares. The wife challenges this ruling.

The wife also contended that the husband should be required to reimburse her for payments made by her to defray the 1976 municipal real estate taxes on the marital domicile. She argued that "Paragraph Thirteenth (b)" of the agreement imposed a duty upon the husband to satisfy all liens and encumbrances upon the marital home including real estate taxes. The trial justice ruled that the husband was required to pay only those taxes which had actually become due and payable on or before February 24, 1976, and that all taxes which became payable thereafter would be the sole responsibility of the wife in consideration of other support provisions contained in the property settlement agreement.

We shall consider each of the points raised by the parties in the order in which they are set forth above.

## RELEASE DISPUTE

The question presented here is whether the provisions of "Paragraph Fourteenth" of the agreement include a promise on behalf of the wife to release her husband from liability in respect to his activities as trustee of an *inter vivos* trust established for the benefit of Mollie Levin. We believe that the terms used in "Paragraph Fourteenth" relating to releases from civil and criminal liability were cast in extremely broad and comprehensive language. The word "estate" has been defined as "[t]he interest which any one has in lands, or in any other subject of property." Black's Law Dictionary 643

(4th ed. 1951). The word "estate" is a word of the greatest extension and comprehends every species of property, real and personal. *See Cooney* v. *Lincoln,* 20 R.I. 183, 37 A. 1031 (1897); *Deering* v. *Tucker,* 55 Me. 284 (1867). "Estate" comprehends everything a man owns, real and personal, and ought not to be limited in its construction, unless connected with some other word which must necessarily have that effect. *Pulliam* v. *Pulliam,* 10 F. 23 (W.D. Tenn. 1879); *Weber* v. *Bardon,* 92 N.J. Eq. 190, 111 A. 649 (1920); *Black* v. *Sylvania Producing Co.,* 105 Ohio St. 346, 137 N.E. 904 (1922); *Reed* v. *Reed,* 215 Or. 91, 332 P.2d 1049 (1958); *Black's Law Dictionary, supra.*

The wife argues that the term is limited in this instance by the first sentence in "Paragraph Fourteenth" which provides that "any property received as an *inheritance* by the wife from her mother's estate, is, shall be and remain her own property * * *." (Emphasis added.) We believe that this sentence relates solely to the wife's separate property and is not in any way relevant to the scope of the releases mentioned in the sentence which followed.

Indeed, it would be necessary to rewrite the language relating to releases in order to construe narrowly the provision to exclude the actions of the husband as cotrustee of the *inter vivos* trust. The trial justice, in adopting the interpretation which so limited the language, concluded that the word "trustee" was "irrelevant completely" and "superfluous."

In construing a written contract, words will be taken in their ordinary and popular sense. *Cochran* v. *Lorraine Manufacturing Co.,* 52 R.I. 17, 155 A. 572 (1931); *Butler Exch. Co.* v. *Fess Rotary Oil Burner Co.,* 125 A. 360 (R.I. 1924). When a contract evidences care in its preparation, we will presume that its words were deliberately employed. *John F. Davis Co.* v. *Shepard Co.,* 71 R.I. 499, 47 A.2d 635 (1946). Therefore, we believe that the word "trustee" should not be discarded as superfluous when a perfectly reasonable construction would give the term meaning. This agreement was a multipage document including numerous exhibits and

detailed listing of assets. It evidenced an intention on the part of the husband and wife to resolve once and for all their differences on a wide range of subject matter. The plain and unambiguous terms of "Paragraph Fourteenth" connote the intension of the husband who drafted the document to seek complete release from liability to which he might be subjected by his wife for his handling of his mother-in-law's estate, as either coexecutor or cotrustee. There is utterly no basis for carving out of the generality of these terms an exception in regard to the *inter vivos* trust.

We therefore conclude that it was error for the trial justice so to limit the provisions of this paragraph and that the husband was entitled to a release from the wife concerning any claims which she might have arising from his handling of the *inter vivos* trust in his capacity as cotrustee.

## SET-OFF DISPUTE

Here we must decide whether it was error for the trial justice to decline consideration of a setoff claimed by the husband against his admitted liability to pay his wife the sum of $1,200 under the terms of "Paragraph Twelfth (c)" of the agreement. The husband bases his set-off claim upon an alleged understanding with his wife outside the parameters of the agreement to reimburse him for certain income tax liability which he defrayed, although said liability was based upon income from his wife's securities.

We observe that under G.L. 1956 (1969 Reenactment) §8-10-3, as amended by P.L. 1977, ch. 89, §1, the Family Court now has the authority to consider and enforce "all other contracts between persons, who at the time of execution of said contracts, were husband and wife * * *." At the time of the entry of the decree on February 19, 1977, however, such language was not part of the statutory grant of jurisdiction. Thus, the Family Court did not have the authority to enforce the separate agreement which was not a part of the divorce decree. *O'Connell* v. *O'Connell*, 100 R.I. 444, 216 A.2d 884 (1966). We believe that the trial justice was correct in holding that he had no juristiction to enforce

private agreements between husband and wife which were not a part of any decree of the Family Court.[1]

## HARBOR FUND STOCK DISPUTE

This issue raises a question of whether the *in terrorem* provision of the agreement required the trial justice to rule that 356 shares of non-certificate Harbor Fund stock should be the wife's sole property by reason of the husband's failure to list these non-certificate shares in the schedule of assets. In making this determination, the trial justice concluded that the wife owned this stock and that she was fully aware of its existence, since she received notice of the accretions to her shares in the form of quarterly statements. The *in terrorem* provision which required the husband to list all assets upon pain of forfeiture thereof to the wife was obviously designed to prevent concealment by the husband of his assets, not assets owned by her and of which she had superior, if not exclusive, means of knowledge. Extended discussion of this point is unnecessary. We believe the trial justice was correct in determining that the husband was entitled to 50 percent of all Harbor Fund stock, including the unlisted non-certificate shares of which the wife was aware at all times.

## REAL ESTATE TAX DISPUTE

This issue raises the question of whether the trial justice was correct in ruling that the husband was responsible only for the real estate taxes which had become due and payable as of the date of execution of the agreement, February 24, 1976. The wife relies in her contention upon the language of a portion of "Paragraph Thirteenth (b)" of the agreement which reads as follows:

---

[1]We do not believe that the terms of P.L. 1972, ch. 30, which expanded the equitable powers of the court, affected our holding in *O'Connell v. O'Connell*, 100 R.I. 444, 216 A.2d 884 (1966). This belief is buttressed by the specific inclusion of language referring to agreements between husband and wife in P.L. 1977, ch. 89, §1. We need not decide in this case whether the court could have considered a setoff if it had arisen in an accounting proceeding between the parties or in a proceeding for the partition of real estate.

"The husband warrants that the title to said real estate is free and clear and that to the best of his knowledge, no liens or other encumbrances exist thereon, and the husband agrees to pay to the wife the fair value of any liens or encumbrances which may exist on said real estate on the date of this agreement."

She argues that this language indicates a promise on the part of her husband to pay all of the taxes assessed for the year 1976 on the ground that a statutory lien was created as of the date of assessment of such taxes. It is true that Rhode Island statutes provide that municipal taxes constitute a lien on real estate. G.L. 1956 (1970 Reenactment) §44-9-1. The lien, however, does not become determinable for a given year until the tax roll has been certified. Section 44-5-22. Thus, the trial justice found that the taxes which were assessed as of December 31, 1975, for the year 1976, were not within the scope of the parties' intentions as expressed in "Paragraph Thirteenth" and related only to that portion of real estate taxes "due and owing on the property up until the date of signing of this agreement * * *." We believe that this is a reasonable construction in the light of the entire agreement and conclude that the trial justice's decision on this issue was correct.

The cross-appeals are sustained in part and denied in part, and the case is remanded to the Family Court for entry of a modified decree in accordance with this opinion.

*McOsker, Isserlis & Davignon, Milton L. Isserlis,* for petitioner.

*Peter Spinella, Gerard McG. DeCelles,* for respondent.