[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before the Court for decision is the municipal Defendants' (Defendants)[1] motion for summary judgment with respect to the Plaintiff's breach of contract and indemnification claims. Also before the Court is Plaintiff's cross motion for summary judgment. This Court's jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 FACTS and TRAVEL
The Northern Rhode Island Private Industry Council (PIC) is a non-profit corporation that works in cooperation with the Governor, local governments and private industry representatives to provide job training programs to towns and municipalities in northern Rhode Island. PIC was organized pursuant to the Federal Job Training and Partnership Act (JTPA), a repealed federal grant program that funds state job training and employment preparation of youth, unskilled adults, and special needs persons. 29 U.S.C. § 1501 (1998). JTPA authorized the creation of private industry councils, such as PIC, in order to provide policy guidance and oversight with respect to JPTA programs in partnership with local governments. 29 U.S.C. § 1513(a). PIC's membership is composed of representatives from the state, the private business sector, organized labor, community based organizations and educational institutions. 29 U.S.C. § 1512(a)(1), (2), (3) (a-e).
In addition to providing policy guidance, developing a Job Training Plan and overseeing the Plan activities, PIC is responsible for disbursing federal and state grants.[2] The funds are distributed to geographic areas that have a demonstrated need for job rehabilitation assistance. 29 U.S.C. § 1511. JTPA defines these areas as Service Delivery Areas or SDAs.29 U.S.C. § 1511(a)(1)(A) A group of contiguous municipalities that would otherwise qualify as an SDA is referred to under the Act as a consortium.29 U.S.C. § 1511(a)(4)(A)(ii), (a)(4)(B). Around 1983, the neighboring municipalities of Central Falls, Cumberland, North Smithfield, Pawtucket, Burrillville, Smithfield, Woonsocket and Lincoln decided to participate in JTPA programs and were known collectively as the Northern Rhode Island Job Training Consortium (Consortium or Defendants).
JTPA strongly encourages, if not requires, private industry councils to enter into written contracts with its subgrantees[3] (in this case, the Consortium) in order to establish "clear goals and obligations in unambiguous terms." See 29 U.S.C. § 1574(e)(2)(B) (authorizing the Secretary of Labor to hold recipients (private industry councils) liable to repay misexpenditures of funds if, inter alia, they do not have such a contract). PIC and the Consortium entered into at least three of these agreements, called Local Elected Official Agreements (Agreement), over a period of years. The Agreement signed in the spring of 1998, which by its terms endured until June 30, 2000, governs the relationship of the parties and the resolution of this dispute.
Section 1574(a)(1) of JTPA, requires each state to establish fiscal controls and fund accounting procedures to assure that JTPA funds received by the recipient are properly disbursed and accounting for. In Rhode Island, the responsibility to audit PIC, the fund recipient, fell to the Rhode Island Auditor General. The Auditor General is appointed by the General Assembly pursuant to G.L. 1956 § 22-13-1 et. seq. to perform auditing services to the legislature and other state agencies. Section 22-13-4. In 1999, the Rhode Island Auditor General audited PIC and concluded that PIC was running a deficit of more than one million dollars. According to the Auditor General's report, the losses resulted primarily from expenses for various programs that exceeded grant awards made for those programs and the audit report specifically cited PIC for not having proper controls in place to monitor its cash flow and assets.
William Delaney was appointed permanent receiver of PIC in October, 1999. PIC filed a notice of claim on the eight municipalities that participated in JTPA to cure the aforesaid deficit, but none of the municipalities have paid the claims. Subsequently, PIC brought this action to recover those amounts it believes it is owed by the municipalities.
 SUMMARY JUDGMENT STANDARD
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact."Palmisciano v. Burrillville Racing Ass'n, 603 A.2d 317,320 (R.I. 1992) (citing Steinberg v. State, 427 A.2d 338
(R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. R. Civ. P. 56(c). Neither party raises any issues of material fact so this Court will proceed to determine whether either party is entitled to judgment as a matter of law.
 THE LOCAL ELECTED OFFICIAL AGREEMENT
The Plaintiff claims that the Defendants have a contractual duty to pay PIC's financial obligations. In support of its position, the Plaintiff points to Article III of the Agreement entitled Financial Liability/Responsibility, which states:
 "The Consortium shall assume the full financial liability/responsibility for the proper expenditure of funds in accordance with the law and regulations issued under JTPA. The Consortium shall require the NRIPIC, Inc. and its subcontractors to maintain adequate safeguards and insurance's [sic] to protect the financial interest of the Consortium as detailed in the Job Training Plan. In addition, the NRIPIC, Inc., at a minimum, shall maintain Fidelity, General Liability, Directors and Officers Legal Liability Insurance."
The Defendants ardently object to this provision being construed to create a guarantee or indemnification agreement. Furthermore, they raise lack of consideration as an affirmative defense.
First, this Court will briefly address the Defendants' argument that the Agreement is not supported by consideration. Bilateral contracts must be supported by sufficient consideration. R.I. Bhd. of Corr. Officers v.Rhode Island, 264 F. Supp. 2d 87, 93 (D.R.I. 2003) (when an agreement lacks a definite obligation on the part of one party, there is insufficient consideration to constitute a valid and enforceable bilateral contract). Rhode Island follows the majority rule that defines consideration as some right, interest or benefit flowing to one party or some forbearance, detriment or responsibility undertaken by the other.Nat'l Educ. Ass'n-R.I. by Scigulinsky v. Ret. Bd. of R.I. Employees Ret.Sys., 890 F. Supp 1143, 1159 (D.R.I. 1995), vacated on other groundsby 172 F.3d 22 (1st Cir. 1999). The parties must have bargained for this consideration and the consideration must induce performance by the party receiving it. Hayes v. Plantations Steel Co., 438 A.2d 1091, 1094 (R.I. 1982). Furthermore, "if practiced parties to commercial transactions bargain for and receive consideration that they deem satisfactory, and that the law regards as substantial, it is not the court's role, absent fraud or other exceptional circumstances, to evaluate relative adequacy of consideration or to reweigh the soundness of the parties' judgment."In re Newport Plaza Assocs, L.P., 985 F.2d 640, 647 (1st Cir. 1993).
The Defendants contend that, "to the extent that this contractual provision [above] has any meaning, it requires that NRIPIC provide and maintain adequate insurance to protect the financial obligations Plaintiff expected the consortium to assume . . . NRIPIC did not obtain insurance and therefore, there is no consideration for the indemnification." The evidence before the Court, regarding whether the Plaintiff complied with this contractual term, is inconclusive. The Receiver has attached a copy of the declaration and terms of a liability insurance policy (policy number 751-133713-98) to his memorandum in opposition to the Defendant's summary judgment motion. The policy was issued by Executive Risk Indemnity, Inc., to the Plaintiff, effective July 20, 1998 through July 20, 1999. The policy purports to insure PIC against wrongful acts, which is contractually defined as, inter alia, any actual or alleged error, omission, misstatement, misleading statement or breach of duty by PIC. The coverage is limited by Endorsement No. 5, which precludes indemnification for any claims by any federal, state or local supervisory or regulatory agency based or arising out of the misuse of PIC's funds or violation or breach of any terms or conditions of any contract, grant or other agreement which controls, directs or limits the use of funds of the PIC.
This Court refrains from making any findings of fact or conclusions of law regarding whether the insurance policy proffered by the Plaintiff complies with its contractual duty to provide "at a minimum . . . Fidelity, General Liability, Directors and Officers Legal Liability Insurance." First, the issue has no bearing on whether the Agreement is supported by adequate consideration. Rather, the promise to obtain proper insurance is merely a term of the Agreement, the nonperformance of which, if proved, would constitute a breach. Second, the Defendants, by agreement, assumed responsibility for ensuring that PIC acquired proper insurance. The Agreement clearly states, "the Consortium shall require
the NRIPIC, Inc. and its subcontractors to maintain adequate safeguards and insurance's [sic] to protect the financial interest of the Consortium as detailed in the Job Training Plan." (Emphasis added.) Whether the Defendants' inaction constituted a waiver of its rights under the contract is a question of fact for another proceeding. Lajayi v.Fafiyebi, 860 A.2d 680, 687 (R.I. 2004).
Setting aside the Plaintiff's obligation to obtain proper insurance, it is clear that the Agreement between PIC and the Consortium is supported by adequate consideration. The Defendants received concrete benefits by entering into the Agreement: they received federal funds dedicated to the rehabilitation and vocational education of the municipalities' unemployed. The Defendants do not deny that they have received benefits from participating in JTPA. Moreover, there is no other reason why the municipalities would enter into a Local Elected Official Agreement other than to receive JTPA funds. In exchange for receiving the benefits that inured to them through participation in JTPA, the Defendants promised to assume financial responsibility for the use and distribution of JTPA funds. This is a clear example of bargainedfor-exchange consideration for a bilateral contract.
Moving ahead, in order to determine if either of the parties is entitled to judgment as a matter of law, it is necessary to closely examine the language of the Agreement. Generally, "when, in the course of business transactions between people or corporations, free and uncoerced understandings purporting to be comprehensive are solemnized by documents which both parties sign and concede to be their agreement, such documents are not easily bypassed or given restrictive interpretations." Int'lBus. Machs., Corp., v. Catamore Enters., Inc., 548 F.2d 1065, 1073 (1st Cir. 1976). This general proposition is applied through the "plain meaning" rule of construction for contracts. The rule provides that where a court finds that the terms of a contract are clear and unambiguous, the task of judicial construction is at an end and the contract terms must then be applied as written and the parties bound by them. Textron, Inc.v. Aetna Cas. Sur. Co., 638 A.2d 537, 539 (R.I. 1994).
With respect to the Agreement provision at issue, this Court holds that the contract language is clear and unambiguous. Garden City TreatmentCtr., Inc. v. Coordinated Health Partners, Inc., 852 A.2d 535, 543 (R.I. 2004) (contract is ambiguous when it is reasonably and clearly susceptible to more than one interpretation). The contract language, "the Consortium shall assume the full financial liability/responsibility for the proper expenditure of funds in accordance with the law and regulations issued under JTPA" clearly creates an obligation on the part of the Defendants to assume responsibility for the expenditure of JTPA funds. Because the contract is unambiguous, this Court will neither inquire into the intent of the parties nor extrinsic evidence. VincentCo. v. First Nat'l. Supermarkets, Inc., 683 A.2d 361, 363 (R.I. 1996). A court may look to surrounding circumstances of contract formation to determine parties' intended meaning of words of contract only when such words are ambiguous and open to more than one interpretation; when the contract is unambiguous, however, intent of the parties becomes irrelevant. Id.
The Defendants argue that "clearly, the Consortium was not prepared to essentially indemnify Plaintiff financially with respect to financial management of an entity over which it had no control." This statement is not legally persuasive. "That a private contract may be improvident or hard, or prompted by motives not commendable in the forum of conscience, does not alone constitute ground for refusal to enforce an agreement intelligently and freely made by competent parties standing on equal footing." Sparne v. Altshuler, 80 R.I. 96, 104, 90 A.2d 919, 923 (1952). In the case at bar, both parties intelligently and freely entered into the Agreement and are bound by the plain meaning of its terms.
The Defendants also argue that since the Agreement does not use the words indemnification, guarantee or variations thereof, the contract does not create a duty to pay for PIC's debts. The Court is not persuaded by this argument because invocation of magic words is neither a prima facie element of the Plaintiff's claim nor does it affect the validity of the Agreement or the obligations of the parties thereunder. Jenckes v. Rice,
93 N.W. 384, 385 (Ia. 1903) (if the intention to indemnify is apparent from the contract it will be construed as a contract of indemnity, even though the parties refer to it by some other name); cf Williams v. WhiteMountain Constr. Co., 749 P.2d 423, 426 (Co. 1988) (the presence of the term indemnity does not guaranty that an indemnity contract is created). In other words, "[t]he legal effect of what men do is not to be determined by names which they affix to their deeds." Lawrence v.O'Connell, 141 F. Supp. 316, 320 (D.R.I. 1956). Rather, "[t]he character of an instrument depends upon its effect, since courts look to the real nature of an agreement, and not at all upon what the parties call it." Id. The fact that the Agreement does not use the words indemnification or guarantee does not change the fact that the Consortium agreed to be liable for the proper expenditure of JTPA funds.
It is worth emphasizing that the Defendants voluntarily chose to participate in JTPA. If the duties under the statute or the Agreement were too burdensome, they did not have to accept the JTPA funds. In order to receive JTPA funds, the Defendants agreed to various duties under the Local Elected Official Agreements. In addition to assuming financial liability for the expenditure of JTPA funds, the Consortium, through the Agreement, also agreed to provide program oversight; approve the Job Training Plan that is submitted to the Governor; make recommendations to PIC and appoint the members of PIC.
By accepting JTPA funds, the Defendants also agreed to operate within the federal statutory framework, provisions of which contemplated holding the Consortium responsible for JPTA funds and proper program administration. The JTPA definition of a subrecipient, such as the Consortium is, "the legal entity to which a subgrant is awarded and which is accountable to the recipient [PIC] for the use of the funds provided.20 C.F.R. § 626.5. Furthermore, the Consortium could be sanctioned by the Governor if procurement standards were not met. 29 U.S.C.S. § 1574(a)(5)(B) ("If the Governor determines that a service delivery area or substate area is not in compliance with the procurement standards established pursuant to paragraph 3, the Governor shall . . . impose the sanctions provided under subsection (b) in the event of failure to take the required corrective action.") Lastly, § 1551 of JTPA clearly provides that while the PIC is responsible for the allocation of funds, it retained the power to "take action" against the Consortium to eliminate abuses in the programs and to prevent misuse of funds. The Defendants agreed to be subject to the burdens of the statute, stated above, when they accepted its benefits.
 NORTH SMITHFIELD
North Smithfield joined the other Defendants in their motion for summary judgment and its accompanying memorandum of law. However, it also submitted a memorandum on its own behalf raising the issue that its home charter requires that the Town Administrator get approval from the Town Council for any contracts that he may enter into. The pertinent provision of the charter is found at Art. V, § 6 and states that:
 "The town administrator shall be the chief executive and administrative officer of the town and shall be responsible for the administration of all departments, offices and agencies except as otherwise provided by this charter. To accomplish this purpose he shall: . . . (6) Negotiate contracts on behalf of the town with the approval of town council."
North Smithfield argues that because there is no evidence in the official records of the Town that such approval was requested or granted, the Agreement is not binding upon the Town.
The Plaintiff argues that Art. I, § 9 of the North Smithfield charter is the controlling provision. It states:
 "The Town may enter into a contract or cooperative agreement with the federal government, with the state, or with any political subdivision thereof for the performance of any services and the use of any facilities."
The Plaintiff contends that Art. I, § 9 is the more specific provision and controls the general provision of Art. V, § 6. The Court disagrees with the Plaintiff's analysis regarding the North Smithfield administrator's power to contractually bind the Town without approval from the Town Council. PIC is neither the federal government, the state or any political subdivision thereof. Therefore, Art. I, § 9 is irrelevant.
"When a court is called upon to construe the provisions of a municipal charter, the usual rules of statutory construction are employed."Coventry Sch. Comm. v. Richtarik, 122 R.I. 707, 411 A.2d 912, 915
(1980). "It is well-settled doctrine that when a statute is clear and free from ambiguity, it is the obligation of this court to give effect to its clearly expressed intent. In such circumstances we must accord the words of the statute their literal and plain meaning." Koch Fuels, Inc.,v. Clark, 676 A.2d 330, 336 (R.I. 1996) (Citations omitted). The language of the charter is unambiguous and clearly expresses the intent of North Smithfield government that the Administrator may enter into contracts only with the consent of Town Council. The Court refuses to read the charter provisions as granting the Town Administrator more authority than what is clearly granted to him in Art. V, § 6.
Because the North Smithfield Town Administrator did not seek permission from the Town Council to enter into the Agreement, it is not enforceable against the town. Contracts with municipalities are governed by the same rules as other contracts. Capital Props., Inc., v. State, 749 A.2d 1069,1082 (R.I. 1999). One such rule is that a contract will not be enforceable against a principle unless the agent who entered into the contract had actual authority to do so. Potter v. Crawford, 797 A.2d 489,492 (R.I. 2002). Furthermore, the authority of a public agent to bind a municipality must be actual. School Committee of City of Providence v.Board of Regents for Ed., 429 A.2d 1297, 1302 (R.I. 1981).
In order to determine whether a contract with a municipality is void, the court must determine: (1) whether the city was acting within its general corporate powers, but the particular act is void on account of some defect in the execution of power; or (2) whether the city's act in question is void because it is entirely beyond its corporate powers under any circumstances. Capital Props., 749 A.2d at 1083. The distinction is important because "in cases of the former class, the municipality is generally held liable for such benefits as it may have received in the course of the transaction, while in cases of the latter class, no recovery is permitted from the municipality for the value of the benefits received." Id. In this case, the North Smithfield Town Administrator was clearly without actual authority to enter into the Agreement with PIC. "A person's failure to discover the true scope of a government agent's actual authority will not provide any grounds to relieve that person's detrimental reliance upon the agent's representations or actions." Id. at 43. However, because it was certainly within the Town's power to enter into the Agreement, the Court finds that this situation is one where the town was acting within its general corporate powers, but the particular act is void on account of some defect in the execution of power. Therefore, North Smithfield's damages are limited to quantum meruit damages.
 CONCLUSION
The Agreement entered into by the Defendants, acting as a Consortium as defined by JTPA, is supported by adequate consideration and is unambiguous. The Defendants, except North Smithfield, must perform their obligation to accept responsibility and liability for the expenditure of JTPA funds by PIC. North Smithfield is liable for such quantum meruit damages as may be proven. The Defendants' motion for summary judgment is denied.
The Plaintiff's cross motion for summary judgment is granted as to liability only because there is insufficient evidence before the Court to make a determination of damages. Although both parties attached a copy of the Auditor General's report to their memoranda, it was not relied upon by the Plaintiff for the purpose of proving damages. Therefore the Court reserves judgment on damages for future disposition, whether it be by hearing or trial.
Additionally, the Court is aware of the fact that there are no less than seven Defendants who are liable under the contract. The issue arises then as to whether the Defendants will be held jointly and severally liable for such damages as may be found. Neither party addressed this issue in their summary judgment memoranda. The Court will note, however, that in the oldest incarnation of the Local Elected Official Agreement, which the Plaintiff avers was executed in 1983, the Defendants agreed to be held liable under the following specific language found in Article VIII, Financial Responsibility/Liability:
 "Each city/town in the Consortium will bear equal liability for the improper or inappropriate expenditure of JTPA funds identified through financial audit of the programs delivered through the Northern Rhode Island Private Industry Council."
The agreements executed in the following years were silent as to how liability would be apportioned among the Defendants. Thus, whether the 1998 Agreement provides for joint and several liability or whether the Defendants are jointly and severally liable as a matter of law, must also be resolved in a future proceeding.
Prevailing party will submit an order consistent with the decision herein.
[1] The Defendant municipalities are Central Falls, Cumberland, North Smithfield, Pawtucket, Burrillville, Smithfield, Woonsocket and Lincoln.
[2] Section 1513(b)(B)(i) requires that the PIC select a grant recipient through its Elected Local Official Agreement. Recipient is defined by the JTPA regulations as, "the entity to which a JTPA grant is awarded directly from the Department of Labor to carry out the JTPA program." 20 C.F.R. § 626.5. Article IV of the Agreement between PIC and the Consortium designates PIC as the grant recipient, which "shall be responsible for or delegate the responsibility of receiving and disbursement of funds."
[3] Subgrantee is synonymous with subrecipient. 20 C.F.R. § 6226.5.